DANIELLE M. HOLT
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
Ph (702) 222-9999
Fax (702) 383-8741
danielle@decastroverdelaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, pro hac vice application pending)
ALEXANDRA J. MONSON
(Cal. Bar No. 324794, pro hac vice application pending)
GREENFIRE LAW, PC
P.O. Box 8055
Berkeley, CA 94707
(510) 900-9502
jblome@greenfirelaw.com
amonson@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CANA FOUNDATION, a non-profit corporation, LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>Defendants. | CASE NO. 2:22-cv-01200<br><br>**PLAINTIFFS' REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Complaint Filed: July 26, 2022<br>Hearing: |

Plaintiffs CANA Foundation, a non-profit corporation, Laura Leigh, individually, and Wild Horse Education, a non-profit corporation, by and through their counsel, Danielle Holt, Esq., move this court for a temporary restraining order and preliminary injunction against Defendants United States Department of Interior, Bureau of Land Management, and Jon Raby, Nevada State Director of the Bureau of Land Management ("Defendants"). This request is submitted pursuant to Rule 65(a) and (b) of the Federal Rules of Civil Procedure (FRCP).

Plaintiffs' motion is based upon the following Declaration of Danielle Holt, Esq. and Memorandum of Points and Authorities; the Declaration of Laura Leigh attached hereto as Exhibit "1;" the Declaration of Laurie Ford attached hereto as Exhibit "2;" as well as any oral argument the court may entertain, and any other papers and pleadings in this action. *See* ECF No. 1, Plaintiffs' Complaint for Injunctive and Declaratory Relief ("Complaint").

## **DECLARATION OF DANIELLE HOLT IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

STATE OF NEVADA      )
                     ) ss.
COUNTY OF CLARK      )

I, Danielle Holt, being duly sworn, declare as follows:

1. I am a resident of the state of Nevada and a licensed attorney. I represent Plaintiffs in this matter.

2. On August 2, 2022, my co-counsel in this matter, Alexandra J. Monson, Esq., called and emailed the attorney representing the United States Department of Interior in a matter similar to this to notify them of Defendants' First Amendment violations and that Plaintiffs would be seeking a temporary restraining order and preliminary injunction if the parties could not come to a resolution.

3. In response, the attorney who will be representing the United States Department

of Interior in this matter, Michelle M. Spatz from the Department of Justice, emailed attorneys for Plaintiffs, including myself.

4. Department of Justice followed up with another email on the evening of August 2, 2022, indicating that Defendants are not willing to provide Plaintiffs access to view the gather of wild horses at Blue Wing Complex.

5. On August 3, 2022, Ms. Monson replied to the Department of Justice notifying them that Plaintiffs' First Amendment rights are still being violated and that Plaintiffs would be filing this request today.

6. Plaintiffs are requesting a temporary restraining order in this matter, even if the U.S. Government is not able to attend the hearing, because the gather of wild horses and burros described in the Complaint and this request for temporary restraining order is ongoing.

7. Also more fully described in the motion, Plaintiffs are suffering injury as a result of the BLM's failure to comply with the First Amendment to the U.S. Constitution.

8. Plaintiffs and their members and supporters are distraught at the irreversible violation of their First Amendment rights to observe the government's gather of wild horses and burros before their permanent removal from the public lands to private facilities.

9. I bring this motion in good faith, for good cause, and not for purposes of undue delay or harassment.

10. I declare under penalty of perjury the foregoing to be true to the best of my knowledge and recollection.

Further this Declarant Sayeth Naught.

DATED this 3rd day of August, 2022.

                                                                                   /s/ Danielle Holt
                                                                                   Danielle Holt

**Memorandum of Points and Authorities**

**A.     Introduction**

The BLM is intentionally denying Plaintiffs unobstructed access to BLM's activities on public lands in Nevada in violation of the First Amendment to the U.S. Constitution. The BLM's gather of wild horses and burros at the Blue Wing Complex began on August 1, 2022 and is ongoing. The BLM plans to gather and remove approximately 200 wild horses and 800 wild burros. The BLM reports that as of August 2nd, 304 animals have been gathered, 108 animals have been permanently shipped off the range to private facilities, and 4 animals have died. However, members of the public are being intentionally denied unobstructed access to BLM's trap sites, BLM's handling of the animals, and BLM's temporary holding corrals. *See* Exhibit 2, Declaration of Laurie Ford. When removing gathered animals from a range, the BLM ships the wild horses and burros from the temporary holding corrals to private short-term holding facilities that are off-limits to the public. Plaintiffs have been irreversibly denied their right to view the trapping, handling, condition, and identity of the animals gathered and shipped thus far. Plaintiffs respectfully request a temporary restraining order (TRO) and preliminary injunction preventing Defendants from gathering and removing any additional wild horses and burros from the Blue Wing Complex until Defendants give Plaintiffs unobstructed access to the BLM's activities, including the temporary holding corrals, as required by the First Amendment to the U.S. Constitution.

**B.     Statement of Material Facts**

   **1.     The Blue Wing Complex**

The Blue Wing Complex is located in the Winnemucca District of Nevada and consists of 2,283,300 acres of land. The Blue Wing Complex is made up of five Herd Management Areas (HMAs), four Herd Areas (HAs), and other non-HMA areas. The HMAs are: Kamma

Mountains, Seven Troughs Range, Lava Beds, Blue Wing Mountains, and Shawave. The HAs are: Antelope Range, Selenite Range, Trinity Range, and Truckee Range.

On July 26, 2022, the BLM publicly announced that a wild horse and burro gather would begin on August 1, 2022 on the Blue Wing Complex.[1] The gather is ongoing and BLM plans to gather and remove a total of approximately 200 wild horses and 800 wild burros. *Id.* As of the filing of this request, the BLM reported that on the first day of the gather, August 1st, 174 wild burros were gathered from the Blue Wing Complex.[2] On the second day of the gather, August 2nd, 130 wild burros were gathered and 108 wild burros were shipped to off-site private holding facilities. *Id.* Of the 304 burros gathered, 118 are male wild burros ("jacks"), 162 are female wild burros ("jennies"), and 24 are wild burros under the age of one year old ("foals"). *Id.* All 24 of the foals were shipped away to private holding facilities on August 2nd, along with 84 jennies. *Id.* On the first day of operations, one 17-year-old jenny died from a broken neck during the gather. *Id.* On the second day, one 13-year-old jenny, one 9-year-old jack, and one 16-year-old jack were killed. *Id.* The jenny was killed because of a "pre-existing large hematoma on [her] stomach" and the two jacks were killed because of "pre-existing fractures" to one leg each. *Id.*

Laurie Ford, a representative of Plaintiff Wild Horse Education, observed the first and second days of the gather at Blue Wing Complex on August 1st and 2nd. *See* Exhibit 2. The BLM brought Ms. Ford to a location approximately 1.3 miles from the trap site for public

---

[1] *See* Bureau of Land Management, *Bureau of Land Management to Begin the FY2022 Blue Wing Complex Wild Horse and Burro Gather* (July 26, 2022), https://www.blm.gov/press-release/bureau-land-management-begin-fy2022-blue-wing-complex-wild-horse-and-burro-gather-0.

[2] *See* Bureau of Land Management, *2022 Blue Wing Complex Wild Horse and Burro Gather* (Aug. 2, 2022), https://www.blm.gov/programs/wild-horse-and-burro/herd-management/gathers-and-removals/nevada-humboldt-fo/2022-blue (the BLM website initially misreported the August 1st operation as gathering 174 wild *horses* instead of burros—the correction was made after approximately 24 hours).

observation. *Id.* There were also BLM trucks and stock trailers obstructing Ms. Ford's view of the trap. *Id.* Due to the distance and the obstruction from the trucks, even the equipment that Ms. Ford brought—cameras and lenses built for extreme distance image capture—could not help her capture and view any features or conditions of the animals being pursued by helicopters into the trap site. *Id.* The trap pens where the animals are kept after entering the trap sites were also predominantly obstructed while BLM personnel were loading the animals onto trailers. *Id.* This prevented Ms. Ford from observing and documenting the BLM's handling of the animals as they were loaded onto trucks to be brought to the temporary holding corrals. *Id.*

      Ms. Ford could vaguely see from a distance that some of the burros were quite small and therefore young. *Id.* From the far distance, she was not able to see any features that would allow her to identify individual burros or tell them apart. *Id.* She believes that at least 8 burros have been roped by BLM personnel this far. *Id.* Of particular concern, Ms. Ford saw one burro being roped by BLM, after being pursued by helicopter for an unknown distance, for over an hour. *Id.* At one point, she believes she saw the burro fall to his side and flip over form the struggle. *Id.* Ms. Ford would like to check on this burro's health condition after the incident, but BLM has not allowed her to view the burro in any way that would allow her to assess his condition or even identify which particular burro it is so that she can track him through BLM's adoption process. *Id.*

      Ms. Ford was prohibited by BLM from observing the handling of animals or their conditions at the temporary holding corrals on the first two days of the operation. *Id.* She was told by BLM personnel that the public will not be allowed access to the temporary holding corrals at all during the rest of the gather operation. *Id.*

      **2.    First Amendment**

      In the Ninth Circuit, wild horse gathers conducted by the BLM qualify for the right of

access established in *Press-Enterprise Co. v. Superior Court (Press-Enterprise II),* 478 U.S. 1, 8-9, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986). *See Leigh v. Salazar,* 677 F.3d 892, 897-900 (9th Cir. 2012). Thus, the government must demonstrate "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *Press-Enterpise II,* 478 U.S. at 9). The government cannot meet this burden.

Plaintiffs' members and observers made arrangements and traveled to the Blue Wing Complex to observe, photograph, film, and otherwise document the conditions of the gather and the individual horses and burros gathered. The BLM, however, is refusing access to trap sites and holding corrals to Plaintiffs. Plaintiff Wild Horse Education's representative Laurie Ford describes how the BLM is obstructing her access and views of these important government actions and holding facilities, which are often the site of violations of humane handling requirements, in the accompanying Declaration of Laurie Ford. Ms. Ford, and all Plaintiffs and members of the public, have a First Amendment right to access and observe the BLM's activities. This court must intervene to protect Plaintiffs' rights by ordering the BLM to provide meaningful access to document the conditions of this gather.

      **C.**    **Standard of Review**

The standard a moving party must meet to obtain injunctive relief in the form of a temporary restraining order (TRO) or a preliminary injunction is the same: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natl Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008); *see Shell Offshore, Inc. v. Greenpeace, Inc.,* 709 F.3d 1281, 1289 (9th Cir. 2013); *see also, e.g.*, *Quiroga v. Chen,* 735 F.Supp.2d 1226, 1228 (D. Nev. 2010).

### 1. Irreparable Injury

"[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

The public has a qualified right to view wild horse and burro gathers under the First Amendment. *See Leigh v. Salazar*, 954 F. Supp. 2d 1090, 1100-01 (D. Nev. 2013). Courts have long held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U. S. 347, 373 (1976). The Ninth Circuit has gone further to find that even if the First Amendment right to observe government activities is *partially* denied, the denial still constitutes irreparable harm. *See Associated Press v. Otter*, 682 F.3d 821, 825-26 (9th Cir. 2012). In *AP v. Otter*, the Ninth Circuit found that plaintiffs would suffer irreparable injury if they were denied access to witness an entire execution even though they would still be allowed to witness part of the execution and there would be other executions in the future. *Id.* Like the public's right to witness entire executions, the public and Plaintiffs have a right to witness wild horse gathers and any denial of that right, whether partial or in the past, constitutes an irreparable injury.

Plaintiffs will never be able to observe, document, or hold BLM accountable for BLM's gather and handling operations that occurred on August 1st and 2nd in the Blue Wing Complex. Plaintiffs will never again be able to view the burros that were gathered and shipped off of their home of the Blue Wing Complex. Plaintiffs have already suffered great irreparable injury, and continue to suffer every day that BLM continues to gather and ship wild horses and burros while denying the public their First Amendment right to view.

### 2. Balance of Equities

The balance of equities in this case is strongly in favor of the entry of a temporary

injunction because Plaintiffs' interest, and the public's interest, in protecting their First Amendment right to observe government activities greatly outweighs any slight inconvenience or accountability that BLM may face by granting public access to view the gather.

Plaintiffs have already completely lost their right to ever view the gathering and handling of 304 animals from the Blue Wing Complex and permanently lost their ability to ever see the 108 shipped animals again—animals that they have grown to recognize and love over the years—before they are shipped out to private holding facilities.

Without injunctive relief, Plaintiffs' First Amendment rights will continue to be permanently and irrevocably stripped from them. With the requested injunctive relief, the BLM does not even need to delay any gather operations so long as they immediately comply with their duty to grant Plaintiffs unobstructed access to the gather and holding operations on public lands. Therefore, the balance of hardships undoubtably tips in favor of Plaintiffs.

### 3. Public Interest

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Cal. Chamber of Commerce v. Council for Educ. and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (internal quotations and citations omitted). Further, the Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Id.*

The public has a qualified right to view wild horse and burro gathers under the First Amendment. *See Leigh v. Salazar*, 954 F. Supp. 2d at 1100-01. There is therefore significant public interest in ensuring that the public is afforded and not stripped of that right.

### 4. Success on the Merits

Under this factor, plaintiffs must show a "fair chance of success on the merits" of her claim. *Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 754 (9th Cir. 1982)

(internal citation omitted).

There is a well-established "qualified right of access for the press and public to observe government activities." *Leigh v. Salazar*, 677 F.3d at 898 (9th Cir. 2012). The Ninth Circuit has applied the two-step test articulated in *Press-Enterprise Company v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 8-9 (1986), to right of access claims involving wild horse gathers. *See id.* at 898-900. "First, the court must determine whether a right of access attaches to the government proceeding or activity by considering 1) 'whether the place and process have historically been open to the press and general public' and 2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* at 898 (quoting *Press-Enterprise II*, 478 U.S. at 8- 9). "Second, if the court determines that a qualified right applies, the government may overcome that right only by demonstrating 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *Press-Enterprise II*, 478 U.S. at 9).

This Court has found that a qualified right exists to view wild horse gathers. *See Leigh v. Salazar*, 954 F. Supp. 2d at 1100-01. Defendants' *complete and indefinite denial* of access to the temporary holding corrals and forcing the public to stand over one mile from the obstructed trap site and loading areas cannot be seriously argued as "narrowly tailored" to preserve any potential overriding interests. As noted, there are several BLM truck and trailers driving near the trap site all day, and it follows to reason that a few members of the public could also drive or be taken to those locations to document the trap sites and corrals. *See* Exhibits 1 and 2.

Even if, as BLM purports, the gather operations or temporary holding corrals are located on private property, the public is still being denied a right that they usually are afforded and that plays a crucial role in the functioning of government activities. The BLM has historically contracted with private parties to ensure that the public and Plaintiffs are able to, at a minimum,

attend daily tours of the temporary holding corrals where the wild horses and burros who were gathered are kept. *See* Exhibit 1, Declaration of Laura Leigh. This is vital for Plaintiffs who assess the conditions and identities of the animals. *Id.*

It is important to emphasize that "[o]pen government has been a hallmark of our democracy since our nation's founding" and "[w]hen wrongdoing is underway, officials have great incentive to blindfold the watchful eyes of the Fourth Estate." *See Leigh v. Salazar*, 677 F.3d.

Under this factor, Plaintiffs respectfully submit that they have demonstrated a "fair chance of success on the merits" of their claim. *See Sports Form, Inc.*, 686 F.2d at 754.

### D. Conclusion

Plaintiffs respectfully request that this court grant plaintiffs' motion for temporary restraining order enjoining defendants from further gathering activities in the Blue Wing Complex until such time as the court can rule on this simultaneous motion for preliminary injunction, which requests that the BLM be further enjoined from the same until the court rules on the declaratory relief requested, or such other time as the court would deem reasonable. Plaintiffs further request that the court order defendants to give at least one member of each Plaintiff organization unobstructed access to the BLM's corrals and holding facilities so they may observe and document the BLM's activities and the animals gathered thus far to ensure compliance with applicable federal law.

//

//

//

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: August 3, 2022 | Respectfully Submitted, |
| 3 | | */s/ Danielle M. Holt* |
| 4 | | Danielle M. Holt<br>(Nevada Bar No. 13152) |
| 5 | | DE CASTROVERDE LAW GROUP<br>1149 S Maryland Pkwy |
| 6 | | Las Vegas, NV 89104<br>Ph (702) 222-9999 |
| 7 | | Fax (702) 383-8741<br>danielle@decastroverdelaw.com |
| 8 | | |
| 9 | | Jessica L. Blome<br>(Cal. Bar No. 314898, pro hac pending) |
| 10 | | Alexandra J. Monson<br>(Cal. Bar No. 324794, pro hac pending) |
| 11 | | GREENFIRE LAW, PC<br>P.O. Box 8055 |
| 12 | | Berkeley, CA 94707<br>(510) 900-9502 |
| 13 | | jblome@greenfirelaw.com<br>amonson@greenfirelaw.com |
| 14 | | |
| 15 | | *Attorneys for Plaintiffs* |