1   DANIELLE M. HOLT
    (Nevada Bar No. 13152)
2   DE CASTROVERDE LAW GROUP
    1149 S Maryland Pkwy
3   Las Vegas, NV 89104
    Ph (702) 222-9999
4   Fax (702) 383-8741
    danielle@decastroverdelaw.com
5
6   JESSICA L. BLOME
    (Cal. Bar No. 314898, admitted pro hac vice)
7   GREENFIRE LAW, PC
    2748 Adeline Street, Suite A
8   Berkeley, CA 94703
    (510) 900-9502
9   jblome@greenfirelaw.com
10  *Attorneys for Plaintiffs*

11                  **UNITED STATES DISTRICT COURT**

12                       **DISTRICT OF NEVADA**

13  CANA FOUNDATION, a non-profit
    corporation, LAURA LEIGH, individually,
14  and WILD HORSE EDUCATION, a non-
    profit corporation,
15
                                                CASE NO. 2:22-cv-01200-CDS-BNW
16          *Plaintiffs*,
                                                **NOTICE OF MOTION AND MOTION
17              v.                              TO COMPLETE AND SUPPLEMENT
                                                THE ADMINISTRATIVE RECORD**
18  UNITED STATES DEPARTMENT OF
    INTERIOR, BUREAU OF LAND
19  MANAGEMENT, and JON RABY, Nevada
    State Director of the Bureau of Land
20  Management,

21          *Defendants*.

22

23

24

25

26

                         Page 1 of 14

Plaintiffs CANA Foundation, Laura Leigh, individually, and Wild Horse Education, by and through their counsel, respectfully move the Court for an order directing Defendants United States Department of Interior, Bureau of Land Management, and Jon Raby, Nevada State Director of the Bureau of Land Management to complete and supplement the administrative record.

This Motion is based upon the Plaintiffs' Memorandum of Points and Authorities, as well as any oral argument the court may entertain, and any other papers and pleadings in this action.

DATED: March 16, 2023,                    Respectfully Submitted,

*/s/ Jessica L. Blome*
Jessica L. Blome
(Cal. Bar No. 314898, admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com

Danielle M. Holt
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
      Ph (702) 222-9999
      Fax (702) 383-8741
danielle@decastroverdelaw.com

*Attorneys for Plaintiffs*

**Memorandum of Points and Authorities**

I.    **Background**

Between August 1, 2022 and August 12, 2022, the Bureau of Land Management ("BLM") gathered and removed 804 wild burros and 218 wild horses from the Blue Wing Complex of Herd Management Areas, located in Nevada (hereinafter the "2022 Gather"). The animals were gathered by helicopters and of the 1,022 gathered, 14 were killed as a result of the 2022 Gather and the remaining 1,008 were shipped to off-range holding corrals to be prepared for BLM's adoption and sales program or to live at long-term holding facilities.

The 2022 Gather was conducted pursuant to the Blue Wing Complex Gather Plan Final Environmental Assessment, DOI-BLM-NV-W010-2015-0034-EA, and its associated Finding of No Significant Impact and Decision Record ("2017 Gather-EA"), which was finalized in 2017 and authorizes phased gathers over a period of twenty years to maintain a wild horse population within the Appropriate Management Levels for the Blue Wing Complex. The BLM has never prepared a Herd Management Area Plan ("HMAP") for the Blue Wing Complex, as required by the Wild Free-Roaming Horses and Burros Act ("Wild Horse Act"). An HMAP is a critical planning document for federal lands because, through a public process, it establishes long-term management objectives for individual herds of wild horses and burros and their specific habitats.

During the 2022 Gather, BLM denied meaningful public access to observe the gather operations and to obverse the animals in temporary holding corrals. BLM shipped all of the wild burros to an off-range holding corral that was closed to the public. Plaintiffs and the public were denied any meaningful access to view or document a single burro during capture or in holding.

Plaintiffs' First Amended Complaint alleges six causes of action:

1.   **Writ of Mandamus, 28 U.S.C. § 1361:** seeking a writ of prohibition preventing Defendants from further gathering wild horses and burros under the 2017 Gather-EA until Defendants have fully complied with the Wild Horse Act by first preparing an HMAP;

2. **Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1):** seeking an order compelling the BLM to prepare an HMAP for the Blue Wing Complex, as the BLM does not have discretion to ignore its mandatory duty to prepare an HMAP prior to the removal of wild horses and burros from the range;

3. **APA, 5 U.S.C. § 706(2)(A):** alleging that Defendants' decision to conduct the 2022 Gather without first preparing an HMAP for the Blue Wing Complex was arbitrary, capricious, an abuse of discretion, and contrary to the law;

4. **APA, 5 U.S.C. § 706(2)(C):** alleging that Defendants exceeded their statutory jurisdiction and authority, as well as their own regulatory limitations, when they conducted the 2022 Gather without first preparing an HMAP for the Blue Wing Complex;

5. **National Environmental Policy Act, 5 U.S.C. § 706(2):** alleging that Defendants' decision to conduct the 2022 Gather without analyzing significant environmental impacts during the 2017 Gather-EA process and adopting the 2017 Gather-EA was arbitrary and capricious, an abuse of discretion, and contrary to the law; and

6. **First Amendment of the U.S. Constitution:** alleging that Defendants interfered with Plaintiffs' protected right to access wild horse gathers under the First Amendment and this Court's prior precedent by refusing them access to certain aspects of the gather and holding operations. *See Leigh v. Salazar*, 954 F. Supp. 2d 1090, 1100-01 (D. Nev. 2013) (finding a qualified right to view wild horse gathers).

*See* ECF No. 24, First Amended Complaint ("Am. Compl."). Completion and supplementation of the administrative record is absolutely necessary in order for Plaintiffs to fairly adjudicate their six causes of action.

## II.   Legal Standard

Judicial review of agency action under the Administrative Procedure Act ("APA") is generally based on the administrative record that was before the agency at the time of its challenged action. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The

administrative record "consists of all documents and materials directly or indirectly considered by agency decisionmakers and includes evidence contrary to the agency's position." *W. Watersheds Project v. BLM*, No. 3:11-cv-00053-HDM-VPC, 2012 U.S. Dist. LEXIS 1068, at *2-3 (D. Nev. Jan. 4, 2012) (*quoting Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)). The whole record includes all materials and documents considered by the agency, regardless of the deliberative nature, and any withheld documents must be asserted in a privilege log. *Bartell Ranch LLC v. McCullough*, No. 3:21-cv-00080-MMD-CLB, 2021 U.S. Dist. LEXIS 245622, at *6-8 (D. Nev. Dec. 27, 2021).

The Ninth Circuit has recognized exceptions to the general rule limiting reviewing courts to the administrative record in all APA cases, including "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal quotations omitted).

The Ninth Circuit has also held that failure to act claims brought under 5 U.S.C. § 706(1) and non-APA claims are not limited to judicial review of the administrative record. *See San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) (review of a failure to act claim is not limited to the record); *see also W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (courts may consider extra-record evidence in support of the non-APA claims in a case that alleges both APA violations and non-APA violations).

## III.   Argument

Plaintiffs allege that administrative record is *incomplete* because there are deliberative materials that were considered by BLM in making its decision to conduct the 2022 Gather without first preparing an HMAP for the Blue Wing Complex that are not currently included in the record. Plaintiffs also allege that the administrative record needs to be *supplemented* with evidence of the

BLM's legislative history and past policies and practices regarding HMAP preparations and Plaintiffs' First Amendment violation claim.

### A. Defendants must complete the administrative record with deliberative materials.

The administrative record "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (*quoting Exxon Corp.*, 91 F.R.D. at 32) (emphasis in original). The whole administrative record "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.* (internal quotations omitted); *see also Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), *corrected*, 867 F.2d 1244 (1989).

Defendants must add to the administrative record all deliberative materials—including, but not limited to, communications between agency employees and officials and draft documents—as such materials are properly considered part of the record. *Bartell Ranch LLC v. McCullough*, No. 3:21-cv-00080-MMD-CLB, 2021 U.S. Dist. LEXIS 245622, at *6-8 (D. Nev. Dec. 27, 2021). The currently deficient administrative record omits deliberative materials, including internal agency communications and directives related to HMAP preparation, apart from one internal email. Plaintiffs' counsel sent Defendants a letter via email on July 18, 2022, before the 2022 Gather began, explaining Defendants' legal duty to prepare an HMAP and a new or supplemental environmental assessment. Though the letter is included in the administrative record (AR03840-53), the email correspondences nor any internal deliberative materials where the BLM discussed its decision to continue with the 2022 Gather despite these legal duties are not included in the record.

Plaintiffs are also aware of prior agency directives and correspondence with Congress addressing the very question of whether the Wild Horse Act requires the preparation of an HMAP. These materials are highly relevant since "an agency changing its course must supply a reasoned analysis[.]" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983) (internal quotations omitted). For example, on information and belief, former Nevada State

Director Amy Lueders issued a directive regarding the preparation of HMAPs in Nevada in 2015 or 2016, which was then rescinded in 2017. If this prior state directive, or its recission, were relied on by the BLM in deciding to conduct the 2022 Gather without an HMAP for the Blue Wing Complex, then the materials are properly within the administrative record and need to be added in order to complete the record.[1]

Deliberative materials are critical to Plaintiffs' claim that Defendants' decision to conduct the 2022 Gather without first preparing an HMAP and a proper environmental assessment was arbitrary and capricious. These deliberative and internal materials are necessary to determine if Defendants improperly "relied on factors which Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Indeed, the Ninth Circuit in *Earth Island Institute v. Hogarth* relied on various internal materials to find that the challenged policy was the result of improper political and foreign affairs concerns—"factors Congress had not intended it to consider"—and therefore arbitrary and capricious. *Earth Island Inst. v. Hogarth*, 484 F.3d 1123, 1129, 1134-35 (2007). Those materials included: (1) an internal memorandum and briefing materials; (2) various internal communications; and (3) changing drafts of internal memoranda. *Id.*; *see also Native Vill. of Point Hope v. Jewell*, 740 F.3d 489, 503–05 (9th Cir. 2014) (relying on internal emails to invalidate an environmental assessment as arbitrary and capricious).

Defendants must complete the record and add all internal communications, including deliberative materials and agency directives, explaining the agency's decision to conduct the 2022 Gather without first preparing an HMAP or a proper environmental assessment for the Blue Wing Complex.

At the time of filing this motion, Defendants have not produced a privilege log, nor have they claimed to have withheld any records. If Defendants purport to omit any records—including deliberative materials—from the administrative record, Plaintiffs respectfully request an order

---

[1] Even if the BLM claims that these materials were not directly or indirectly considered, the materials speak to the agency's pattern and practice of preparing HMAPs under the Wild Horse Act and need to be supplemented into the record as described in Section III.B.

directing the BLM to produce a privilege log. *See Bartell Ranch LLC*, 2021 U.S. Dist. LEXIS at *6-8 (ordering defendants to produce withheld deliberative materials, or alternatively identify withheld documents in a privilege log).

**B.    Defendants must supplement the administrative record.**

Plaintiffs bring three distinct claims which require supplementation of the administrative record because they do not challenge an agency decision that is properly limited to review of an administrative record. These are Plaintiffs' APA § 706(1) failure to act claim, the mandamus claim, and the First Amendment violation claim.

1.    Failure to Act Claim

Failure to act cases, by their nature, may present circumstances in which is it is particularly appropriate to go beyond the formal administrative record:

> [G]enerally judicial review of agency action is based on a set administrative record. However, when a court considers a claim that an agency has failed to act in violation of a legal obligation, "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000); *see also Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997) (noting that when a suit challenges agency inaction, district court can consider supplemental statements of an agency position because there is no date certain by which to define the administrative record). The reason for this rule is that when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions.

*San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002). Using this same reasoning, this Court held that "[i]n determining whether to compel agency action under § 706(1), courts may look to evidence outside an agency's administrative record because 'there is no final agency action to demarcate the limits of the record.'" *Bundorf v. Jewell*, 142 F. Supp. 3d 1138, 1144 (D. Nev. 2015) (*quoting Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000); *see also Consejo de Desarrollo Economico de Mexicali v. United States*, 438 F. Supp. 2d

1207, 1222 (D. Nev. 2006) ("Because the remaining claims are actions to compel agency action unlawfully withheld, the Court will not limit its review to the Administrative Record"). Further, this Court has permitted discovery related to the facts and circumstances surrounding the agency's alleged failure to act. *Sierra Club v. U.S. Dep't of Transp.*, 245 F. Supp. 2d 1109, 1119 (D. Nev. 2003) (reasoning that discovery should be allowed where the requested information is necessary to fairly adjudicate an issue presented by the case).

Plaintiffs allege that Defendants failed to act in violation of the APA § 706(1) when they unlawfully withheld or unreasonably delayed their mandatory duty to prepare an HMAP for the Blue Wing Complex. Am. Compl. ¶¶ 135-42. Defendants have only included three documents in the record which discuss BLM policies regarding HMAPs. The first is the BLM's Wild Horses and Burros Management Handbook. AR00052-00131 ("Handbook"). The Handbook reaffirms the language from 43 C.F.R. § 4710.4 stating that all management activities be "at the minimum feasible level of management necessary to attain the objectives identified in approved land use plans (LUPs) and Herd Management Area Plans (HMAP)" (AR00057) and notes that HMAPs are prepared under 43 C.F.R. § 4710.3-1 (AR00062). *See* 43 C.F.R. § 4710.3-1 ("[t]he authorized officer shall prepare a herd management area plan"). The Handbook otherwise only offers guidance on how to prepare, analyze, and implement an HMAP. *See* AR00087-95. The second document is the BLM Manual on Wild Free-Roaming Horses and Burros Management. AR00132-38 ("Manual"). The Manual, like the Handbook, reaffirms the HMAP language from 43 C.F.R. § 4710.4 (AR00133; AR00137) and tasks district or field office managers with preparing HMAPs for all HMAs in their offices (AR00135). Finally, the third document discussing HMAPs is the BLM's 2020 Report to Congress. AR03589-03621. In the report, the BLM relays its need to "develop and/or update HMAPs" and highlights the process of developing and updating HAMPs as an "opportunity to inform and involve the public in determining the best actions to take on an HMA into the future." AR03610-11. These three documents are not enough to "fairly adjudicate" whether Defendants failed to act in not preparing an HMAP for the Blue Wing Complex since they are merely three guidance documents that provide no insight into the BLM's pattern, practice,

policy statements, or justifications for its decision not to act. In the past, Plaintiffs have specifically requested that Defendants prepare an HMAP for the Blue Wing Complex and are aware of at least one BLM directive and several internal communications regarding the BLM's duty to prepare an HMAP under the Wild Horse Act and agency regulations.

Plaintiffs respectfully request this Court to supplement the record for the failure to act claim and to include all documents, directives, memoranda, and communications regarding Defendants' decision not to prepare an HMAP for the Blue Wing Complex and all documents, directives, memoranda, and communications regarding Defendants' interpretations, practices, or policies regarding the duty to prepare HMAPs. For example, the 2015/2016 directive regarding the preparation of HMAPs in Nevada issued by former Nevada State Director Amy Lueders, which was then rescinded in 2017. Both the original directive and rescission memoranda are relevant to Plaintiffs' claim that 43 C.F.R. § 4710.4 requires the development of an HMAP and that Defendants have therefore failed to act under APA § 706(1).

### 2.    Writ of Mandamus Claim

Plaintiffs allege two entirely distinct and separate non-APA claims in this case—a writ of mandamus and a violation of the First Amendment. Am. Compl. ¶¶ 126-134; 163-168. Courts may consider extra-record evidence in support of the non-APA claims in a case. *Kraayenbrink*, 632 F.3d at 497.

In a mandamus action, "courts have found discovery to be appropriate where an agency either completely abrogated its enforcement responsibilities or acted clearly outside the bounds of relevant statutes." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 29 (D.D.C. 2002) (citing *Conservation Law Foundation of New England, Inc. v. Clark*, 590 F. Supp. 1467, 1473 (D. Mass. 1984)). Here, Plaintiffs allege that Defendants are in violation of the Wild Horse Act and 43 CFR 4710.4 by failing to prepare an HMAP for the Blue Wing Complex. It is therefore relevant and necessary for the record to contain materials shedding light on the agency's interpretation of the statute and regulation and past pattern, practice, and policies regarding them. By way of example, there may be an agency position statement from 1986 when 43 CFR 4710.4

was promulgated that this Court may find compelling in determining if the BLM has a duty to prepare HMAPs. *See* 43 CFR 4710.4 ("Management shall be at the minimum level necessary to attain the objectives identified in approved land use plans and herd management area plans."). However, this agency position statement would not be, and in fact is not, included in the current record regarding the BLM's decision to conduct the 2022 Gather.

In essence, the mandamus action is asking the Court to determine whether or not the BLM has a duty to prepare an HMAP for the Blue Wing Complex and that duty and judicial review goes beyond just the BLM's recent decision to conduct the 2022 Gather without an HMAP. Therefore, Plaintiffs respectfully ask this Court to supplement the record for the mandamus claim and to include all documents, directives, memoranda, and communications regarding Defendants' interpretations, practices, or policies regarding the duty to prepare HMAPs.

### 3. First Amendment Claim

A direct constitutional challenge is reviewed independent of the APA. *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979). As such, the court is entitled to look beyond the administrative record in regard to this claim. *Id.* at 780; *Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990); *see McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 493 (1991) (discussing a similar issue under the IRCA). Therefore, discovery as to the non-APA claim is permissible. *See Grill v. Quinn,* No. CIV S-10-0757 GEB GGH PS, 2012 U.S. Dist. LEXIS 6498, at *2, 5 (E.D. Cal. Jan. 20, 2012) (where plaintiff alleged "a claim for violation of procedural due process in addition to [an] APA claim," the court could "look beyond the administrative record," and permit limited discovery); *see also Webster v. Doe*, 486 U.S. 592, 604 (1988) (finding that a plaintiff who is entitled to judicial review of constitutional claims under the APA is entitled to discovery regarding those claims). When the factual allegations between the APA claims and the constitutional claims are different, the claims do not fundamentally overlap. *California v. United States Dep't of Homeland Sec.*, No. 19-cv-04975-PJH, 2020 U.S. Dist. LEXIS 57540, at *68-69 (N.D. Cal. Apr. 1, 2020). Further, courts have allowed discovery when "the administrative record is limited to the [a]gency's rulemaking process and sheds no light on" the constitutional violations. *Id.* at *70.

1   Plaintiffs allege that Defendants violated their First Amendment rights by "refusing

2 [Plaintiffs] access to the gather, holding, and shipment operations and only providing them access

3 from far vantage points with known obstructed views." Am. Compl. ¶ 165. Further, it is alleged

4 that Plaintiffs were "denied the right to observe a single wild burro during or after the gather at the

5 Blue Wing Complex." *Id.* at ¶ 166. It is therefore necessary that Plaintiffs be allowed to submit

6 witness testimony and any photographs, videos, and audio captured during the 2022 Gather that

7 describe and illustrate any public access that was granted or denied during the gather operations.

8 As fully described in the First Amended Complaint, First Amendment right of access claims

9 require that the court determine "(1) whether the place and process have historically been open to

10 the press and general public and (2) whether public access plays a significant role in the functioning

11 of the particular process in question." *Id.* at ¶¶ 62-67 (quoting *Leigh v. Salazar*, 677 F.3d 892, 898

12 (9th Cir. 2012)). If both are answered in the affirmative, a qualified right applies, and "the

13 government may only overcome that right by demonstrating an overriding interest based on

14 findings that closure is essential to preserve higher values and is narrowly tailored to serve that

15 interest." Am. Compl. ¶ 65 (quoting *Leigh v. Salazar*, 954 F. Supp. 2d 1090, 1101 (D. Nev. 2013)).

16 Finally, the Court has "a duty to conduct a thorough and searching review of any attempt to restrict

17 public access." Am. Compl. ¶ 66 (quoting *Leigh*, 677 F.3d at 900).

18   Plaintiffs are willing to forgo their right to a full trial—and instead to submit their

19 arguments on summary judgment, but Plaintiffs will be wholly unable to show that their qualified

20 right to access was violated by the government's restrictions if they are not able to present any of

21 their evidence from the 2022 Gather. It would be highly prejudicial to not allow Plaintiffs to enter

22 evidence of their injuries resulting from the alleged constitutional violation. The administrative

23 record currently only includes BLM's own provisions of access and does not include anything that

24 Plaintiffs submitted during the course of the gather. *See, e.g.*, ECF Nos. 10-1, 10-2, Declarations

25 of Laura Leigh and Laurie Ford in Support of Plaintiffs' Motion for a Temporary Restraining

26 Order (declaring that a standing request to view the holding corrals every day was denied, that

Defendants intentionally obstructed views, and that they were unable to view the horses, burros, and BLM's handling practices before they were shipped to a facility with no public access).

Given the legal standard and burdens for a First Amendment qualified right of access claim, Plaintiffs request that the Court expand the record to include:

1. Communications evaluating, discussing, or otherwise regarding public access to observe the 2022 Gather and the horses in holding;

2. All reports, policies, protocols, press releases, and other documents and communications that describe historical public access to BLM gathers and holding facilities;

3. Any contracts or communications within the agency or with third parties regarding facility placement of the horses and public access to gather and holding operations for the 2022 Gather;

4. Photographs, videos, and audio that Plaintiffs and other members of the public documented and submitted to the BLM regarding their access to the 2022 Gather; and

5. Witness testimony, the form of Plaintiffs' supplemental declarations, describing public access to observe the 2022 Gather and the horses in holding, as well as historical public access to BLM gathers and holding facilities.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion to complete and supplement the administrative record.

1    DATED: March 16, 2023,                    Respectfully Submitted,

2                                              */s/ Jessica L. Blome*
                                               Jessica L. Blome
3                                              (Cal. Bar No. 314898, admitted pro hac vice)
                                               GREENFIRE LAW, PC
4                                              2748 Adeline Street, Suite A
                                               Berkeley, CA 94703
5                                              (510) 900-9502
                                               jblome@greenfirelaw.com
6
                                               Danielle M. Holt
7                                              (Nevada Bar No. 13152)
                                               DE CASTROVERDE LAW GROUP
8                                              1149 S Maryland Pkwy
                                               Las Vegas, NV 89104
9                                                   Ph (702) 222-9999
                                                    Fax (702) 383-8741
10                                             danielle@decastroverdelaw.com
11
                                               *Attorneys for Plaintiffs*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26