DANIELLE M. HOLT
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
Ph (702) 222-9999
Fax (702) 383-8741
danielle@decastroverdelaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CANA FOUNDATION, a non-profit corporation, LAURA LEIGH, individually, and WILD HORSE EDUCATION, a nonprofit corporation,<br><br>   *Plaintiffs,*<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>   *Defendants.* | CASE NO. 2:22-cv-01200-CDS-BNW<br><br>**DECLARATION OF JESSICA BLOME IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDICIAL NOTICE**<br><br>Amended Complaint Filed:<br>September 2, 2022 |

I, Jessica Blome, declare that if called as a witness in this action I would competently testify of my own personal knowledge, as follows:

1.      I am an attorney with Greenfire Law, PC, counsel for Plaintiffs in the above-titled action.

2.      Attached hereto as **Exhibit 7** is a true and correct copy of Notes for 43 CFR Subtit. B, Ch. II, Subch. D, Group 4700. This was downloaded from Lexis Nexix.

3.      Attached hereto as **Exhibit 8** is a true and correct copy of 51 Fed. Reg. 7410, Mar. 3. 1986.

4.      Attached hereto as **Exhibit 9** is a true and correct copy of 56 Fed. Reg. 786, January 9, 1991.

5.       Attached hereto as **Exhibit 10** is a true and correct copy of 43 C.F.R. §4700 et seq. (1985).

6.      Attached hereto as **Exhibit 11** is a true and correct copy of 49 Fed. Reg. 49252, Dec. 18, 1984.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 14th day of December 2023.

*/s/ Jessica L. Blome*
Jessica Blome

Declaration of Laurie Ford in Support of Plaintiffs' Motion for Judicial Notice

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2023, I electronically filed the foregoing Declaration of Laurie Ford in Support of Plaintiffs Motion for Judicial Notice along with Exhibits 1-6 with the Clerk of the U.S. District Court in the District Court of Nevada using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

*/s/ Jessica L. Blome*
Attorney for Plaintiffs

# Exhibit 7

**43 CFR Subtit. B, Ch. II, Subch. D, GROUP 4700**

## *43 CFR Subtit. B, Ch. II, Subch. D, GROUP 4700*

This document is current through the July 25, 2023 issue of the Federal Register, with the exception of the amendments appearing at 88 FR 47782, and 88 FR 47741.

*LEXISNEXIS' CODE OF FEDERAL REGULATIONS  >  Title 43 Public Lands: Interior  >  Subtitle B — Regulations Relating to Public Lands  >  Chapter II — Bureau of Land Management, Department of the Interior  >  Subchapter D — Range Management (4000)  >  GROUP 4700 — Wild Free-Roaming Horse and Burro Management  >  Part 4700 — Protection, Management, and Control of Wild Free-Roaming Horses and Burros*

## Part 4700 — Protection, Management, and Control of Wild Free-Roaming Horses and Burros

## Statutory Authority

#### AUTHORITY NOTE APPLICABLE TO ENTIRE PART:

*16 U.S.C. 1331*-*1340*; *18 U.S.C. 47*; *43 U.S.C. 315* and *1740*.

Annotations

## Notes

#### NOTES APPLICABLE TO ENTIRE PART:

The information collection requirements contained in Group 4700 have been approved by the Office of Management and Budget and assigned clearance number 1004-0042. The information is being collected to permit the authorized officer to remove wild horses and burros from private land and to determine whether an application for adoption of and title to wild horses or burros should be granted. Responses are required to obtain benefits.

Public reporting burden for this information is estimated to average 0.165 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Information Collection Clearance Officer, Division of Information Resources Management, Bureau of Land Management (770), 1849 C Street NW., Washington, DC 20240, and the Office of Management and Budget, Paperwork Reduction Project 1004-0042, Washington, DC 20503.

[51 FR 7414, Mar. 3. 1986, as amended at *56 FR 786, Jan. 9, 1991*]

## Research References & Practice Aids

#### Hierarchy Notes:

43 CFR Subtit. B, Ch. II, Subch. D, GROUP 4700

*43 CFR Subtit. B*

*43 CFR Subtit. B, Ch. II*

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2023 All rights reserved.

**End of Document**

# Exhibit 8



**Monday**
**March 3, 1986**

## Part VI

# Department of the Interior

**Bureau of Land Management**

**43 CFR Part 4700**

**Revision of Existing Regulations on Protection, Management, and Control of Wild Free-Roaming Horses and Burros; Final Rule**

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

### 43 CFR Part 4700

[Circular No. 2577]

### Revision of Existing Regulations on Protection, Management, and Control of Wild Free-Roaming Horses and Burros

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Final rulemaking.

---

**SUMMARY:** This final rulemaking revises the provisions on wild free-roaming horses and burros in Part 4700 to reduce the regulatory burden on the public, to clarify the management procedures of the Bureau of Land Management as they affect the public, to remove unnecessary provisions, and to improve the organization of the regulations.

**EFFECTIVE DATE:** April 2, 1986.

**ADDRESS:** Inquiries or suggestions should be sent to: Director (250), Bureau of Land Management, Room 901, Premier Building, Department of the Interior, Washington, DC 20240.

**FOR FURTHER INFORMATION CONTACT:** John S. Boyles (202) 653–9215.

**SUPPLEMENTARY INFORMATION:** A proposed rulemaking to revise the existing regulations on the protection, managment, and control of wild free-roaming horses and burros on public lands was published in the **Federal Register** on December 18, 1984 (49 FR 49252). Comments were invited for a period of 60 days ending February 19, 1985, during which period a total of 19 comments were received, with 10 from associations, 6 from Federal agency offices, 2 from State governments, and 1 from a Member of Congress. All of the comments have been given careful consideration during the decisionmaking process on this final rulemaking.

The comments contained discussions of specific sections of the proposed rulemaking and in many instances recommended changes, some of which have been adopted in this final rulemaking. This preamble will discuss only those sections that were the subject of specific comments or were changed.

*Section 4700.0–2 Objectives.*

One comment suggested that the objectives should be amended to conform more closely to the statutory objectives stated in the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340) (the Act). Based on this comment, the section has been amended to incorporate the statutory requirement that wild horses and burros be managed

"as an integral part of the natural system of the public lands" under the principle of multiple use.

*Section 4700.0–5 Definitions.*

Several comments addressed the proposed definitions of the terms "appropriate management level" and "excess animals." Most of the comments criticized the proposed definitions of the terms as being inconsistent with the statutory definitions and intent, and urged that the statutory language be used. In response to these comments, the definitions of both terms have been removed from the final rulemaking. The language of the statute will govern management.

One comment questioned whether the definition of "authorized officer" allows for appeals by the public to higher authority. The definition merely defines who is to carry out the provisions of this rulemaking, and has no bearing on appeals under the Administrative Procedure Act or 43 CFR Part 4 of any decision made under these regulations. The definition is not changed in the final rulemaking.

Two comments addressed the definitions for "band" and "herd", urging that the former be removed and that the latter be conformed to the language in the Act. In response to these comments, the definitions of both terms have been removed from the rulemaking. "Herd" is defined in the Act. "Band" is not used in the text of the final rulemaking, and thus does not require definition.

Several comments addressed the definition of "commercial exploitation," urging that it be expanded to include slaughtering and processing the remains of horses and burros, and not be limited to using the wild characteristics of the animals for financial gain. Slaughtering a wild horse or burro is prohibited by § 4770.1(c) of this relemaking, and selling a wild horse or burro or its remains is prohibited by § 4770.1(d). Processing of the remains of a wild horse or burro is addressed in § 4730.2 , which prohibits receiving compensation for remains, but allows disposal of remains through rendering. The definition is retained unchanged.

Several comments objected to the proposed definition of "humane treatment," which required that handling be consistent with "standard animal husbandry practices." Because no specific group of husbandry practices can be presented as a "standard," the word has been replaced in the final rulemaking with the phrase "accepted by the veterinary community." Accepted animal husbandry practices are those outlined in textbooks on the subject. The

BLM has relied primarily on the following:

1. Bradley, Melvin. *Horses: A Practical and Scientific Approach.* New York: McGraw-Hill, Inc., 1981.

2. Ensminger, M.E. *Horses and Horsemanship*, 5th ed. Danville, Illinois: The Interstate Printers and Publishers, Inc., 1977.

In addition, the adjectives "kind" and "merciful" have been removed because they are redundant, given that the requirement that handling not cause unnecessary stress or suffering.

Another comment stated that "stress," referred to in the definition, is undefined. In this and all other cases where common words or expressions are used, the ordinary dictionary definition is intended to be applied.

Several comments addressed the definition of "inhumane treatment." Some stated a preference for the definition in the existing regulations; others stated that requiring the treatment to be intentional is too restrictive, and that it should be defined to include inflicting pain and suffering. The word "death" has been replaced in the definition in the final rulemaking with "undue suffering", in response to one of the comments, and to allow the authorized officer to destroy animals in appropriate circumstances. The definition has also been expanded to include negligent as well as intentional behavior, and the word "standard" is replaced for the reasons stated above. However, the definition in the existing regulations is not retained because it may be too restrictive, in that it includes a specific list of proscribed acts or omissions without stating clearly that other acts or omissions may constitute inhumane treatment.

One comment suggested that the definition of "old wild horse or burro" should be amended to make it clear that, to be subject to destruction as an act of mercy because of physical deterioration, the animal's deterioration must have rendered it unable to fend for itself. This suggestion has been adopted in the final rulemaking.

One comment stated that the definition of "wild horses and burros" should be amended to include their progeny. This change has not been adopted in the final rulemaking because it would include animals born after their mothers have been placed under a Private Maintenance and Care Agreement. Such animals have never been "unbranded or unclaimed horses and burros on public lands of the United States," the statutory definition of wild horses and burros. The final rulemaking

does address progeny born while the mothers are on public land or at adoption centers. In response to a comment, the definition has been amended to assure that the term includes the characteristic "free-roaming".

One comment suggested including in the rulemaking a definition for "herd area." This suggestion has been adopted in the final rulemaking. Two comments urged that a definition of "malicious harassment" be included. This request has not been adopted in the final rulemaking. Instead, the prohibition in § 4770.1(a) has been amended to prohibit negligent as well as malicious injury or harassment. The terms negligence and malice are both well-defined in the law.

*Section 4700.0-6 Policy.*

Several comments addressed paragraph (a) of this section, urging that the policy should emphasize that wild horses and burros should be managed as one of the multiple uses of the public lands, not as a dominant use limited only by the capacity of the habitat. Other comments urged that more than just museum-exhibit populations should be maintained on the public lands. Paragraph (a) of § 4700.0-6 has been amended in the final rulemaking to accommodate both suggestions, that is, to require that populations be self-sustaining and that populations of horses and burros be kept in balance with other uses as well as the productive capacity of the habitat.

Several comments addressed paragraph (b) of this section, urging that the language on forage allocation in the existing regulations (43 CFR 4700.0-6(c)) be retained. Other comments stated that the word "comparably" is vague and should be replaced by "equivalent" in describing how wild horses and burros will be considered in relation to other resources in formulating land use plans. Specific provision for forage allocation is not necessary because the policy is clearly stated that wild horse and burro management will maintain self-sustaining populations. This cannot be done without adequate forage. The word "comparably" is used in the existing regulations to require all resource values to be considered in proportion to their presence on the land, competition with other resources, and the interest of the public in them. Assigning equal or equivalent weight to all resources, as some comments suggested, would not allow varying circumstances to be treated appropriately. The paragraph is not changed in the final rulemaking.

Two comments addressed paragraph (c) of this section, urging that it be policy to manage wild horses and burros at the minimum feasible level, and expressing concern that maintaining free-roaming behavior of the animals may be inconsistent with multiple use of the public lands. Failure to maintain the free-roaming nature of the animals would be contrary to the policy established by the Act. The requirement that management shall be at the minimum level to attain planning objectives is contained in § 4710.4. It is not necessary to amend this provision.

One comment urged that paragraph (d) of this section be amended to preclude cooperative arrangements for the management of wild horses and burros. The Act specifically authorizes the Secretary of the Interior to enter into cooperative agreements with State and local governments and with individual landowners to attain management objectives. The paragraph is retained in the final rulemaking. It should be understood that § 4710.7 retains the statutory provisions for individuals to maintain wild horses and burros on their private land.

Although there were no comments on paragaph (e), it has been amended by removing the word "nationwide" in reference to adoption centers, to avoid misleading the public into expecting to find adoptable animals in every community around the country.

In response to several comments, and to make it consistent with § 4750.4–2(b), paragraph (f) has been amended to state that adoption fees will "normally" be required.

One comment asked for a policy declaration on removal of animals from private land. Such a declaration is unnecessary because the procedure is clearly stated in § 4720.2–1. Another comment asked that management guidelines be included in the policy statement. Such guidelines are more appropriately stated in manuals for the use of field personnel of the Bureau. Neither suggestion has been adopted in the final rulemaking.

*Section 4710.1 Land use planning.*

Several comments addressed this section. One expressed general support, another asked for language requiring that management activities comply with law and Congressional intent, and a third urged that management activities be included in approved land use plans. In response to the second comment, management activities shall be in accordance with the law regardless of any criteria in regulations. In response to the third, the paragraph has been amended by substituting the words "in accordance" for "compatible" in describing the relationship of management actions to land use plans. Management activities, including the development of herd management area plans, must not only be compatible with the land use plan but must also reflect specific guidance derivable from the land use plan on the subjects of resource allocation, relationships between wild horses and burros and other recognized uses, and critical resource use levels that would require modification of the plan's multiple-use prescriptions.

*Section 4710.2 Inventory and monitoring.*

Several comments urged that the authorized officer be required to address the numbers of horses and burros that existed in herd areas in 1971 as a basis for further management. This suggestion is not adopted in the final rulemaking. There is no indication in the Act or its legislative history that herds should be managed at their 1971 size or any other specific level. Furthermore, although estimates of 1971 population levels have been made, they are at best conjectural and highly unreliable. It is more appropriate to allow the authorized officer the flexibility to determine appropriate management levels based on analysis of competing land uses, forage availability, and public concern.

Another comment urged that the authorized officer be required to monitor herd and habitat characteristics regardless of whether herd management areas are established. This suggestion has not been adopted in the final rulemaking, because this type of information is useful only when herds are to be managed in the long term. This provision has been amended to delete the list of items to be inventoried and monitored on herd management areas, because these will vary depending on the objectives in the herd management area plan.

*Section 4710.3–1 Herd management areas.*

Several comments addressed this section, expressing concern that it could be interpreted to direct every District Manager of the Bureau of Land Management to establish herd management areas. This provision has been amended to alleviate this concern and to clarify that herd management areas shall be established only where herds existed in 1971. One comment suggested that the effect on nearby private land of management for wild horses and burros should be taken into account in delineating herd management areas. This suggestion has been adopted in the final rulemaking.

*Section 4710.3–2 Wild horse and burro ranges.*

Several comments objected to this section as implying that numerous wild horse and burro ranges will be

established on public lands. Such ranges are specifically provided for by law (16 U.S.C. 1333(a)), and will be established only upon completion of the appropriate planning process, including public participation. The section has been retained, with editorial changes, in the final rulemaking.

*Section 4710.4   Constraints on management.*

Several comments addressed this section, pointing out that limiting wild horses and burros to their 1971 "yearlong" habitat could effectively eliminate most of their actual habitat from management as herd areas, due to their seasonal use of some areas. The section has been amended to remove the reference to yearlong habitat. In this connection, a definition has been added for "herd area" in § 4700.0–5. Another change has been incorporated to make it clear that management will not be restricted to herd areas, but will rather be undertaken with the objective of limiting animal distribution to herd areas by controlling herd size to prevent habitat from being overpopulated.

*Section 4710.5   Closure to livestock grazing.*

Numerous comments addressed paragraph (a) of this section, either opposing it as inconsistent with multiple use management, or urging that it be amended to provide additional protection for wild horses and burros. Actions under this section are discretionary with the authorized officer and subject to public consultation. The provision is necessary to allow the authorized officer to meet the needs of all users of the public lands, including wild horses and burros, and is retained unamended in the final rulemaking.

Several comments asked that paragraph (b) of this section be amended to allow camp horses or riding stock to graze on public lands inhabited by wild horses and burros. The paragraph has been amended to make it clear that herd areas are closed only to grazing under permit or lease by domestic horses and burros, and not to pack or camp horses. In addition, for the latter it is the normal practice that outfitters carry fodder for their animals with them, or limit their grazing by tying or hobbling them, so interference by these animals with or consumption of forage needed by wild horses and burros is minimal.

As a result of concerns expressed in numerous comments, paragraph (c) of this section has been rewritten in the final rulemaking to clarify the limits on the authority of the authorized officer. Sufficient authorities for this provision are found in the Taylor Grazing Act and the Federal Land Policy and Management Act, as well as the Wild Free-Roaming Horse and Burro Act. Any notice of closure will be subject to the normal administrative appeal process.

*Section 4710.6   Removal of unauthorized livestock in or near areas occupied by wild horses or burros.*

In response to public comment, this section has been amended to make it clear that any conditions established for the removal of unauthorized livestock would apply only to removal from public lands.

*Section 4710.7   Maintenance of wild horses and burros on privately controlled lands.*

This section has been amended to remove the requirement that private maintenance occur only on unfenced land, because that requirement is not supported by law. Landowners may voluntarily provide for and maintain wild horses and burros that freely move onto their land, whether it is fenced or not.

*Section 4720.1   Removal.*

One comment discussed the term "current information" in this section, and suggested that detailed language in the statute at 16 U.S.C. 1333(b)(2) be included in the regulation. The authorized officer is equally bound by the statute and the regulations, and there is no need to repeat the requirements of the law in the regulations. The comment is not adopted in the final rulemaking.

An editorial change has been made in § 4720.1(b), adding the word "humanely" to meet the requirements of law.

Three comments addressed paragraph (c) of this section, 2 of them urging that it be removed from the rulemaking, and 1 asking that a time limit be set for holding captured animals. Section 1333(b)(2)(C) of the Act requires the humane destruction of excess wild horses and burros. Even if the section were removed from the rulemaking, the responsibility to carry out the law would remain. Retaining the paragraph in the rulemaking makes it clear that the Secretary may impose standards for humane destruction of excess animals. Setting a time limit on holding captured animals would deprive the authorized officer of flexibility needed to meet various circumstances, such as temporary lulls in adoption demand.

*Section 4720.2–1 Removal of strayed animals from private lands.*

Several comments addressed this section, stating that the information requested from private landowners seeking removal of strayed animals from their land was too burdensome and should be supplied only in the discretion of the landowner. However, it would be impossible for the authorized officer to be responsive to a request for removal of strayed animals without specific information about the number of animals involved, their location and that of the private lands, and the dates the animals were observed. Requiring this information would enable the authorized officer to determine the appropriate agency action and to assign to each individual request its appropriate priority. Therefore, the final rulemaking makes the content of such requests mandatory by replacing the word "should" with "shall." Other comments urged that the regulation require immediate or priority removal of strayed animals. The comments are not adopted in the final rulemaking, because circumstances may make such action impossible. Requiring that removal be accomplished as soon as practicable commits the Bureau to expeditious removal of strayed animals.

*Section 4720.2–2 Removal of excess animals from private lands.*

One comment stated that the authorized officer should not be required to obtain written permission from the owners of unimproved private lands intermingled with public lands in herd areas when removing excess animals. This comment has been adopted in the final rulemaking by removing the phrase "or using". A sentence has been added to make it clear that flying aircraft over a parcel of land does not constitute entry.

*Section 4730.1 Destruction.*

Several comments addressed this section, observing both the Congressional intent that destruction be a tool for managing wild horses and burros, and the legislatively drawn distinction between destruction of excess animals and destruction of old, sick, and lame animals as an act of mercy. The section has been rewritten in the final rulemaking to conform to the statute in these respects.

*Section 4730.2 Disposal of remains.*

Several comments addressed this section, some urging that it prohibit processing of remains, and others that some provision be made for compensating individuals for disposal of remains. Neither suggestion has been adopted in the final rulemaking. To provide consistency with the Act, and to remove the ambiguity between the words "carcasses" and "remains", the former has been replaced with the latter wherever it appeared. Processing remains is the most appropriate way of disposing of them and complies with the law so long as neither the Bureau nor any individual receives compensation for conveying the remains. Although no compensation can be received for

transfer of the remains, once the remains have been sanitarily rendered in accordance with normal local or State standards, the renderer may sell the end products, which are no longer considered remains as used in the Act.

In response to one comment, the section has been amended to make it clear that the Bureau is not required to dispose of remains of animals that die on the open public range.

*Section 4740.1 Use of motor vehicles or aircraft.*

This section has been amended to reflect numerous comments stating generally that management activities should be conducted in a humane manner, and to clarify that a public hearing shall be held before using helicopters or motor vehicles in the management of wild horses and burros.

*Section 4740.2 Standards for vehicles used for transport of wild horses and burros.*

Two comments urged that this section be amended to provide specific standards for head room in horse trailers and to require that food given to animals in transit be compatible with what they are accustomed to. Such specificity is unnecessary in these regulations. Bureau personnel are trained to judge whether trailers are suitable for transporting individual animals, and allowing feed rations to change while remaining adequate may help adopted animals adjust to their new environments.

*Section 4750.2–1 Health and identification requirements.*

One comment suggested that verification of an animal's soundness and health, required in paragraph (a) of this section, should be obtained from a licensed veterinarian. This recommendation would eliminate the possibility of obtaining a verification from other qualified individuals. Another comment recommended that the provision for tests, immunizations, and worming be removed from the rulemaking because they are not required by Federal law. These tests may not be required by Federal law, but are required by the laws of many of the public land States. Neither recommendation has been adopted in the final rulemaking.

One comment sought the removal of the provision in paragraph (c) for freeze-marking unweaned foals, because of possible stress on the young animals and because of doubt as to their status as free-roaming if born after their dams have been rounded up. This comment has not been adopted in the final rulemaking. Foals born in captivity but before their dams are adopted into private maintenance are considered free-

roaming for purposes of these regulations. Also, while freeze-marking may involve some stress, it is the most humane and cost-efficient way of providing the necessary identification of these animals.

*Section 4750.3–1 Application for private maintenance of wild horses and burros.*

Several comments urged that the provision for a nonrefundable filing fee to accompany the application be removed from the regulations, on the grounds that imposing a fee would tend to discourage adoptions. The recommendation is adopted in the final rulemaking.

*Section 4750.3–2 Qualification standards for private maintenance.*

One comment address paragraph (a)(1) of this section, asking that legal age be determined by where an applicant is a citizen or permanent resident. To avoid the confusion inherent in making this kind of determination, the provision has been amended in the final rulemaking to require only that the applicant be at least 18 years old.

One comment requested that the rulemaking state the minimum acceptable standards for facilities for animals in private maintenance. Paragraph (a)(3) has been rewritten to state those standards.

*Section 4750.3–3 Supporting information and certification for private maintenance of more than 4 wild horses and burros.*

The opening paragraph of § 4750.3–3(a) has been rewritten for purposes of clarification and stricter compliance with the judicial settlement in *American Horse Protection Association, Inc., et al v. Watt, et al* (the AHPA settlement). The amendment makes it clear that the facilities must be physically inspected by a person determined by the authorized officer to be qualified.

Paragraph (a)(1) of this section has been amended to cross-refer to the standards contained in the previous section, in order to make clear the responsibilities of those seeking to adopt more than 4 horses or burros. Paragraph (b) has been rewritten to be more consistent with the AHPA settlement. In the final rulemaking this paragraph makes it clear that the required information is to be provided by holders of powers of attorney to adopt animals on behalf of members of a group.

*Section 4750.4–1 Private Maintenance and Care Agreement.*

Paragraphs (b), (c), and (d) of this section have been removed in the final rulemaking, and the remaining paragraphs redesignated, to eliminate

duplication between the provisions stated in the agreement required by this section and the acts prohibited in § 4770.1.

One comment suggested that paragraph (e) of the proposed rulemaking be amended to prohibit long-term or indefinite as well as permanent transfers of adopted animals without prior approval by the authorized officer. This comment has been adopted in the final rulemaking in paragraph (b) by imposing a 30-day limit on transfers without such prior approval.

One comment suggested that adopters be given a definite time within which an animal must be made available for inspection after written request by the authorized office under paragraph (f). This recommendation has been adopted in the final rulemaking by imposing a 7-day deadline.

Two comments suggested that paragraph (g) of the proposed rulemaking ((d) in this final rulemaking) be amended to require a veterinarian's certificate in all cases of the death of an adopted animal. This suggestion has not been adopted in the final rulemaking, but it remains within the discretion of the authorized officer to require such a certificate.

One comment requested more specificity in paragraph (h) of this section in the proposed rulemaking. In response, the paragraph has been amended to make it clear that it is the adopter's financial responsibility to care for animals covered by the Private Maintenance and Care Agreement. New paragraphs have been added to clarify that the adopter is responsible for managing adopted animals, for damages cause by them, for rounding up strays, and for disposal of dead animals. In response to a comment, a requirement has been added that the adopter notify the authorized office of any change of address.

*Section 4750.4–2 Adoption fee.*

Paragraph (a) of this section has been amended in the final rulemaking to conform to the amendment of § 4750.3–1, which removed the application fee. An editorial change has also been made to make it clear that only unweaned foals are not subject to the adoption fee.

*Section 4750.4–3 Request to terminate Private Maintenance and Care Agreement.*

In response to a comment, this section has been amended to clarify that adopted animals may be transferred directly to a new adopter, with the approval of the authorized officer, and that the officer need not take physical possession of animals involved in such transfers.

*Section 4750.4–4   Replacement animals.*

One comment from a Bureau field office suggested shortening from 60 to 10 days the period within which an adopter can obtain an animal to replace one that has died or had to be destroyed due to a condition that existed at the time of adoption. This suggestion was not adopted. Instead, because some conditions that may cause death after a 60-day period may have existed at the time of adoption, this section has been amended to extend the time to 6 months.

*Section 4750.5   Application for title to wild horses and burros.*

Several comments objected to the provision in paragraph (a) of this section allowing adopters to acquire title to more than 4 animals in one year as not being supported by section 1333(c) of the Act. The provision has been removed in the final rulemaking.

One comment requested that paragraph (b) of this section be amended to state in some detail the required contents of the veterinarian's statement to be supplied by the applicant for title. In response to this comment, the word "humane" has been inserted in front of "treatment," so that the required certification will incorporate the elements listed in the definition (§ 4700.0–5(g)) of "human treatment," i.e., handling compatible with standard animal husbandry practices.

Another change has been made in the final rulemaking affecting title application. Application for title has been incorporated in the adoption process so that an adopter applies for title to an animal automatically at the time the Private Maintenance and Care Agreement is signed. The final sentence of the paragraph has been removed as redundant.

*Section 4760   Compliance with the Private Maintenance and Care Agreement.*

A new paragraph (b) has been added to this section to conform it to the terms of the settlement in *American Horse Protection Association v. Watt.* Paragraph (b) requires the authorized officer to verify compliance with the Private Maintenance and Care Agreement when one adopter has acquired 25 or more animals, or 25 or more are maintained in one place.

One comment pointed out that paragraph (b) of this section in the proposed rulemaking (relettered (c) in the final rulemaking), when read in conjunction with § 4750.4–1(f), requires the authorized officer investigating a complaint about the care, treatment, or use of an adopted animal to notify the adopter in writing before inspecting the animal or the facilities where it is maintained. This is a correct statement of the requirement, which is not changed in the final rulemaking. However, the authorized officer may enlist the assistance of Federal or local law enforcement authorities, who may with proper cause obtain a search warrant and investigate without such warning.

*Section 4770.1   Prohibited acts.*

One comment stated that paragraph (a) of this section demonstrates the need for a definition of "malicious harassment," and another stated that the prohibition in this paragraph would be very hard to enforce because of the difficulty of proving malicious intent. The paragraph has been amended to prohibit negligent as well as malicious injury of a wild horse or burro.

The separate prohibition against using a wild horse or burro for bucking stock has been removed from the final rulemaking. Any use considered to be inhumane is already prohibited in § 4770.1(e), and use that takes advantage of an animal's characteristic of wildness is prohibited in § 4770.1(e).

A paragraph has been added to this section prohibiting the violation of orders, terms, or conditions established by the authorized officer. Other changes of an editorial nature have been made.

*Section 4770.2 Civil penalties*

In response to several comments that this section singled out holders of grazing permits for discriminatory treatment, paragraph (a) of this section has been amended to apply to all permittees or lessees on the public lands.

The principal author of this final rulemaking is John S. Boyles, Division of Wild Horses and Burros, assisted by the staff of the Office of Legislation and Regulatory Management, Bureau of Land Management.

It is hereby determined that this rulemaking does not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement pursuant to section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. 4332(2)(C)) is required.

The Department of the Interior has determined that this document is not a major rule under Executive Order 12291 and that it will not have a significant economic effect on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 et seq.). A limited number of veterinarians, cooperative extension agents, and humane officials may be insignificantly affected by the rulemaking. The certification required for adopters to receive title is needed on a nonrecurring basis. The changes allow adopters discretion to choose the official from whom they obtain a certification, resulting in some cost savings. Adopters are required to pay a fee to obtain the animals and to provide information to show their ability to provide humane transport, facilities, and care for the animals. An insignificant number of individuals may be deterred from participating because of the fee or qualification standards for humane care.

Information collection requirements for administering these regulations have been approved by the Office of Management and Budget and assigned clearance number 1004–0042.

List of Subjects in 43 CFR Part 4700

Advisory committees, Aircraft, Intergovernmental relations, Penalties, Public lands, Range management, Wild horses and burros, Wildlife.

Under the provisions of the Act of September 8, 1959 (18 U.S.C. 47), the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340), the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1701 et seq.), and the Act of June 28, 1934, as amended (43 U.S.C. 315), Part 4700, Subchapter D, Chapter II, Title 43 of the Code of Federal Regulations is revised to read as set forth below.

Dated: February 7, 1986.

**J. Steven Griles,**
*Assistant Secretary of the Interior.*

## GROUP 4700—WILD FREE-ROAMING HORSE AND BURRO MANAGEMENT

Note.—The information collection requirements contained in Group 4700 have been approved by the Office of Management and Budget and assigned clearance number 1004–0042. The information is being collected to permit the authorized officer to remove wild horses and burros from private land and to determine whether an application for adoption of and title to wild horses or burros should be granted. Responses are required to obtain benefits.

## PART 4700—PROTECTION, MANAGEMENT, AND CONTROL OF WILD FREE-ROAMING HORSES AND BURROS

### Subpart 4700—General

Sec.
4700.0–1   Purpose.
4700.0–2   Objectives.
4700.0–3   Authority.
4700.0–5   Definitions.
4700.0–6   Policy.

### Subpart 4710—Management Considerations

4710.1   Land use planning.
4710.2   Inventory and monitoring.
4710.3   Management areas.
4710.3–1   Herd management areas.
4710.3–2   Wild horse and burro ranges.
4710.4   Constraints on managment.

Sec.
4710.5   Closure to livestock grazing.
4710.6   Removal of unauthorized livestock in or near areas occupied by wild horses or burros.
4710.7   Maintenance of wild horses and burros on privately controlled lands.

Subpart 4720—Removal

4720.1   Removal of excess animals from public lands.
4720.2   Removal of strayed or excess animals from private lands.
4720.2-1   Removal of strayed animals from private lands
4720.2-2   Removal of excess animals from private lands.

Subpart 4730—Destruction of Wild Horses or Burros and Disposal of Remains

4730.1   Destruction.
4730.2   Disposal of remains.

Subpart 4740—Motor Vehicles and Aircraft

4740.1   Use of motor vehicles or aircraft.
4740.2   Standards for vehicles used for transport of wild horses and burros.

Subpart 4750—Private Maintenance

4750.1   Private maintenance.
4750.2   Health, identification, and inspection requirements.
4750.2-1   Health and identification requirements.
4750.2-2   Brand inspection.
4750.3   Application requirement for private maintenance.
4750.3-1   Application for private maintenance of wild horses and burros.
4750.3-2   Qualification standards for private maintenance.
4750.3-3   Supporting information and certification for private maintenance of more than 4 wild horses or burros.
4750.3-4   Approval or disapproval of applications.
4750.4   Private maintenance of wild horses and burros.
4750.4-1   Private maintenance and care agreement.
4750.4-2   Adoption fee.
4750.4-3   Request to terminate private maintenance and care agreement.
4750.4-4   Replacement animals.
4750.5   Application for title to wild horses and burros.

Subpart 4760—Compliance

4760.1   Compliance with the Private Maintenance and Care Agreement.

Subpart 4770—Prohibited Acts, Administrative Remedies, and Penalties

4770.1   Prohibited acts.
4770.2   Civil penalties.
4770.3   Administrative remedies.
4770.4   Arrest.
4770.5   Criminal penalties.

**Authority:** Act of Dec. 15, 1971, as amended (16 U.S.C. 1331–1340). Act of Oct. 21, 1976 (43 U.S.C. 1701 et seq.). Act of Sept. 8, 1959 (18 U.S.C. 47). Act of June 28, 1934 (43 U.S.C. 315).

## Subpart 4700—General

### § 4700.0-1   Purpose.

The purpose of these regulations is to implement the laws relating to the protection, management, and control of wild horses and burros under the administration of the Bureau of Land Management.

### § 4700.0-2   Objectives.

The objectives of these regulations are management of wild horses and burros as an integral part of the natural system of the public lands under the principle of multiple use; protection of wild horses and burros from unauthorized capture, branding, harassment or death; and humane care and treatment of wild horses and burros.

### § 4700.0-3   Authority.

The Act of September 8, 1959 (18 U.S.C. 47); the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340); the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1711, 1712, and 1734); the Act of June 28, 1934, as amended (43 U.S.C. 315); and the National Environmental Policy Act of 1969 (42 U.S.C. 4321, 4331–4335, and 4341–4347).

### § 4700.0-5   Definitions.

As used in this part, the term:

(a) "Act" means the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340), commonly referred to as the Wild Free-Roaming Horse and Burro Act.

(b) "Authorized officer" means any employee of the Bureau of Land Management to whom has been delegated the authority to perform the duties described herein.

(c) "Commercial exploitation" means using a wild horse or burro because of its characteristics of wildness for direct or indirect financial gain. Characteristics of wildness include the rebellious and feisty nature of such animals and their defiance of man as exhibited in their undomesticated and untamed state. Use as saddle or pack stock and other uses that require domestication of the animal are not commercial exploitation of the animals because of their characteristics of wildness.

(d) "Herd area" means the geographic area identified as having been used by a herd as its habitat in 1971.

(e) "Humane treatment" means handling compatible with animal husbandry practices accepted in the veterinary community, without causing unnecessary stress or suffering to a wild horse or burro.

(f) "Inhumane treatment" means any intentional or negligent action or failure to act that causes stress, injury, or undue suffering to a wild horse or burro and is not compatible with animal husbandry practices accepted in the veterinary community.

(g) "Lame wild horse or burro" means a wild horse or burro with one or more malfunctioning limbs that permanently impair its freedom of movement.

(h) "Old wild horse or burro" means a wild horse or burro characterized because of age by its physical deterioration and inability to fend for itself, suffering, or closeness to death.

(i) "Private maintenance" means the provision of proper care and humane treatment to excess wild horses and burros by qualified individuals under the terms and conditions specified in a Private Maintenance and Care Agreement.

(j) "Public lands" means any lands or interests in lands administered by the Secretary of the Interior through the Bureau of Land Management.

(k) "Sick wild horse or burro" means a wild horse or burro with failing health, infirmity or disease from which there is little chance of recovery.

(l) "Wild horses and burros" means all unbranded and unclaimed horses and burros that use public lands as all or part of their habitat, or that have been removed from these lands by the authorized officer but have not lost their status under section 3 of the Act. Where it appears in this part the term "wild horses and burros" is deemed to include the term "free-roaming".

### § 4700.0-6   Policy.

(a) Wild horses and burros shall be managed as self-sustaining populations of healthy animals in balance with other uses and the productive capacity of their habitat.

(b) Wild horses and burros shall be considered comparably with other resource values in the formulation of land use plans.

(c) Management activities affecting wild horses and burros shall be undertaken with the goal of maintaining free-roaming behavior.

(d) In administering these regulations, the authorized officer shall consult with Federal and State wildlife agencies and all other affected interests, to involve them in planning for and management of wild horses and burros on the public lands.

(e) Healthy excess wild horses and burros for which an adoption demand by qualified individuals exists shall be made available at adoption centers for private maintenance and care.

(f) Fees shall normally be required from qualified individuals adopting

excess wild horses and burros to defray part of the costs of the adoption program.

## Subpart 4710—Management Considerations

### § 4710.1  Land use planning.

Management activities affecting wild horses and burros, including the establishment of herd management areas, shall be in accordance with approved land use plans prepared pursuant to Part 1600 of this title.

### § 4710.2  Inventory and monitoring.

The authorized officer shall maintain a record of the herd areas that existed in 1971, and a current inventory of the numbers of animals and their areas of use. When herd management areas are established, the authorized officer shall also inventory and monitor herd and habitat characteristics.

### § 4710.3  Management areas.

### § 4710.3–1  Herd management areas.

Herd management areas shall be established for the maintenance of wild horse and burro herds. In delineating each herd management area, the authorized officer shall consider the appropriate management level for the herd, the habitat requirements of the animals, the relationships with other uses of the public and adjacent private lands, and the constraints contained in § 4710.4. The authorized officer shall prepare a herd management area plan, which may cover one or more herd management areas.

### § 4710.3–2  Wild horse and burro ranges.

Herd management areas may also be designated as wild horse or burro ranges to be managed principally, but not necessarily exclusively, for wild horse or burro herds.

### § 4710.4  Constraints on management.

Management of wild horses and burros shall be undertaken with the objective of limiting the animals' distribution to herd areas. Management shall be at the minimum level necessary to attain the objectives identified in approved land use plans and herd management area plans.

### § 4710.5  Closure to livestock grazing.

(a) If necessary to provide habitat for wild horses or burros, to implement herd management actions, or to protect wild horses or burros, to implement herd management actions, or to protect wild horses or burros from disease, harassment or injury, the authorized officer may close appropriate areas of the public lands to grazing use by all or a particular kind of livestock.

(b) All public lands inhabited by wild horses or burros shall be closed to grazing under permit or lease by domestic horses and burros:

(c) Closure may be temporary or permanent. After appropriate public consultation, a Notice of Closure shall be issued to affected and interested parties.

### § 4710.6  Removal of unauthorized livestock in or near areas occupied by wild horses or burros.

The authorized officer may establish conditions for the removal of unauthorized livestock from public lands adjacent to or within areas occupied by wild horses or burros to prevent undue harassment of the wild horses or burros. Liability and compensation for damages from unauthorized use shall be determined in accordance with subpart 4150 of this title.

### § 4710.7  Maintenance of wild horses and burros on privately controlled lands

Individuals controlling lands within areas occupied by wild horses and burros may allow wild horses or burros to use these lands. Individuals who maintain wild free-roaming horses and burros on their land shall notify the authorized officer and shall supply a reasonable estimate of the number of such animals so maintained. Individuals shall not remove or entice wild horses or burros from the public lands.

## Subpart 4720—Removal

### § 4720.1  Removal of excess animals from public lands.

Upon examination of current information and a determination by the authorized officer that an excess of wild horses or burros exists, the authorized officer shall remove the excess animals immediately in the following order.

(a) Old, sick, or lame animals shall be destroyed in accordance with Subpart 4730 of this title;

(b) Additional excess animals for which an adoption demand by qualified individuals exists shall be humanely captured and made available for private maintenance in accordance with Subpart 4750 of this title; and

(c) Remaining excess animals for which no adoption demand by qualified individuals exists shall be destroyed in accordance with subpart 4730 of this title.

### § 4720.2  Removal of strayed or excess animals from private lands.

### § 4720.2–1  Removal of strayed animals from private lands.

Upon written request from the private landowner to any representative of the Bureau of Land Management, the authorized officer shall remove stray wild horses and burros from private lands as soon as practicable. The private landowner may also submit the written request to a Federal marshal, who shall notify the authorized officer. The request shall indicate the numbers of wild horses or burros, the date(s) the animals were on the land, legal description of the private land, and any special conditions that should be considered in the gathering plan.

### § 4720.2–2  Removal of excess animals from private lands.

If the authorized officer determines that proper management requires the removal of wild horses and burros from areas that include private lands, the authorized officer shall obtain the written consent of the private owner before entering such lands. Flying aircraft over lands does not constitute entry.

## Subpart 4730—Destruction of Wild Horses or Burros and Disposal of Remains

### § 4730.1  Destruction.

Except as an act of mercy, no wild horse or burro shall be destroyed without the authorization of the authorized officer. Old, sick, or lame animals shall be destroyed in the most humane manner possible. Excess animals for which adoption demand does not exist shall be destroyed in the most humane and cost efficient manner possible.

### § 4730.2  Disposal of remains.

Remains of wild horses or burros that die after capture shall be disposed of in accordance with State or local sanitation laws. No compensation of any kind shall be received by any agency or individual disposing of remains. The products of rendering are not considered remains.

## Subpart 4740—Motor Vehicles and Aircraft

### § 4740.1  Use of motor vehicles or aircraft.

(a) Motor vehicles and aircraft may be used by the authorized officer in all phases of the administration of the Act, except that no motor vehicle or aircraft, other than helicopters, shall be used for the purpose of herding or chasing wild horses or burros for capture or

destruction. All such use shall be conducted in a humane manner.

(b) Before using helicopters or motor vehicles in the management of wild horses or burros, the authorized officer shall conduct a public hearing in the area where such use is to be made.

### § 4740.2  Standards for vehicles used for transport of wild horses and burros.

(a) Use of motor vehicles for transport of wild horses or burros shall be in accordance with appropriate local, State and Federal laws and regulations applicable to the humane transportation of horses and burros, and shall include, but not be limited to, the following standards:

(1) The interior of enclosures shall be free from protrusion that could injure animals;

(2) Equipment shall be in safe conditions and of sufficient strength to withstand the rigors of transportation;

(3) Enclosures shall have ample head room to allow animals to stand normally;

(4) Enclosures for transporting two or more animals shall have partitions to separate them by age and sex as deemed necessary by the authorized officer;

(5) Floors of enclosures shall be covered with nonskid material;

(6) Enclosures shall be adequately ventilated and offer sufficient protection to animals from inclement weather and temperature extremes; and

(7) Unless otherwise approved by the authorized officer, transportation shall be limited in sequence to a maximum of 24 hours followed by a minimum of 5 hours of on-the-ground rest with adequate feed and water.

(b) The authorized officer shall not load wild horses or burros if he/she determines that the vehicle to be used for transporting the wild horses or burros is not satisfactory for that purpose.

### Subpart 4750—Private Maintenance

### § 4750.1  Private maintenance.

The authorized officer shall make available for private maintenance all healthy excess wild horses or burros for which an adoption demand by qualified individuals exists.

### § 4750.2  Health, identification, and inspection requirements.

### § 4750.2–1  Health and identification requirements.

(a) An individual determined to be qualified by the authorized officer shall verify each excess animal's soundness and good health, determine its age and sex, and administer immunizations,

worming compounds, and tests for communicable diseases.

(b) Documentation conforming compliance with State health inspection and immunization requirements for each wild horse or burro shall be provided to each adopter by the authorized officer.

(c) Each animal offered for private maintenance, including orphan and unweaned foals, shall be individually identified by the authorized officer with a permanent freeze mark of alpha numeric symbols on the left side of its neck. The freeze mark identifies the animal as Federal property subject to the provisions of the Act and these regulations by a patented symbol, the animal's year of birth, and its individual identification number. The authorized officer shall record the freeze mark on the documentation of health and immunizations. For purposes of this subpart, a freeze mark applied by the authorized officer is not considered a brand.

### § 4750.2–2  Brand inspection.

The authorized officer shall make arrangements on behalf of an adopter for State inspection of brands, where applicable, of each animal to be transported across the State where the adoption center is located. The adopter shall be responsible for obtaining inspections for brands required by other States to or through which the animal may be transported.

### § 4750.3  Application requirements for private maintenance.

### § 4750.3–1  Application for private maintenance of wild horses and burros.

An individual applying for a wild horse or burro shall file an application with the Bureau of Land Management on a form approved by the Director.

### § 4750.3–2  Qualification standards for private maintenance.

(a) To qualify to receive a wild horse or burro for private maintenance, an individual shall:

(1) Be 18 years of age or older;

(2) Have no prior conviction for inhumane treatment of animals or for violation of the Act or these regulations;

(3) Have adequate feed, water, and facilities to provide humane care to the number of animals requested. Facilities shall be in safe condition and of sufficient strength and design to contain the animals. The following standards apply:

(i) A minimum space of 144 square feet shall be provided for each animal maintained, if exercised daily; otherwise, a minimum of 400 square feet shall be provided for each animal;

(ii) Until fence broken, adult horses shall be maintained in an enclosure at least 6 feet high; burros in an enclosure at least 4½ feet high; and horses less than 18 months old in an enclosure at least 5 feet high. Materials shall be protrusion-free and shall not include large-mesh woven or barbed wire;

(iii) Shelter shall be available to mitigate the effects of inclement weather and temperature extremes. The authorized officer may require that the shelter be a structure, which shall be well-drained and adequately ventilated;

(iv) Feed and water shall be adequate to meet the nutritional requirements of the animals, based on their age, physiological condition and level of activity; and

(4) Have obtained no more than 4 wild horses and burros within the preceding 12-month period, unless specifically authorized in writing by the authorized officer.

(b) The authorized officer shall determine an individual's qualifications based upon information provided in the application form required by § 4750.3–1 of this subpart and Bureau of Land Management records of any previous private maintenance by the individual under the Act.

### § 4750.3–3  Supporting information and certification for private maintenance of more than 4 wild horses or burros.

(a) An individual applying for more than 4 wild horses or burros within a 12-month period, or an individual or group of individuals requesting to maintain more than 4 wild horses or burros at a single location shall provide a written report prepared by the authorized officer, or by a local humane official, veterinarian, cooperative extension agent, or similarly qualified person approved by the authorized officer, verifying that the applicant's facilities have been inspected appear adequate to care for the number of animals requested, and satisfy the requirements contained in § 4750.3–2(a).

(1) The report shall include a description of the facilities, including corral sizes, pasture size, and shelter, barn, or stall dimensions, and shall note any discrepancies between the facilities inspected and representations made in the application form.

(2) When an applicant requests 25 or more animals or when 25 or more animals will be maintained at any single location regardless of the number of applicants, the facilities for maintaining the adopted animals shall be inspected by the authorized officer prior to approving the application.

(b) Any individual or group represented by a power of attorney and applying for more than 4 animals shall provide the following:

(1) A summary of the age, sex, and number of wild free-roaming horses or burros requested by species;

(2) Requested adoption date and center location;

(3) If applicable, names, addresses and telephone numbers of all applicants represented by a power of attorney submitted with the request;

(4) A transportation plan that describes the transport vehicle and any rest-stops;

(5) A distribution plan for delivering the animals to their assigned adopters;

(6) Names, addresses, and a concise summary of the experience of the individuals who will handle the adopted animals during transportation and distribution; and

(7) When the adopted animals will be maintained at a single location or where the applicants have been solicited by the holder of their power of attorney, a concise statement outlining the arrangements, including duties and responsibilities of the parties, for maintaining the animals.

### § 4750.3–4 Approval or disapproval of applications.

If an application is approved, the authorized officer shall offer the individual an opportunity to select the appropriate number, sex, age and species of animals from those available. If the authorized officer disapproves an application for private maintenance because the applicant lacks adequate facilities or transport, the individual may correct the shortcoming and file a new application.

### § 4750.4 Private maintenance of wild horses and burros.

### § 4750.4–1 Private Maintenance and Care Agreement.

To obtain a wild horse or burro, a qualified applicant shall execute a Private Maintenance and Care Agreement and agree to abide by its terms and conditions, including but not limited to the following:

(a) Title to wild horses and burros covered by the agreement shall remain in the Federal Government for at least 1 year after the Private Maintenance and Care Agreement is executed and until a Certificate of Title is issued by the authorized officer.

(b) Wild horses and burros covered by the agreement shall not be transferred for more than 30 days to another location or to the care of another individual without the prior approval of the authorized officer;

(c) Wild horses and burros covered by the agreement shall be made available for physical inspection within 7 days of receipt of a written request by the authorized officer;

(d) The authorized officer shall be notified within 7 days of discovery of the death, theft or escape of wild horses and burros covered by the agreement;

(e) Adopters are financially responsible for the proper care and treatment of all wild horses and burros covered by the agreement.

(f) Adopters are responsible, as provided by State law, for any personal injury, property damage, or death caused by animals in their care; for pursing animals that escape or stray; and for costs of recapture.

(g) Adopters shall notify the authorized officer within 30 days of any change in the adopter's address; and

(h) Adopters shall dispose of remains in accordance with applicable sanitation laws.

### § 4750.4–2 Adoption fee.

(a) An individual obtaining wild horses and burros shall pay the Bureau of Land Management an adoption fee of $125 per horse and $75 per burro, except that no fee shall be paid for unweaned foals.

(b) The Director may adjust or waive the adoption fee on determining that wild horses or burros in the custody of the Bureau of Land Management are unadoptable when the full adoption fee is required, and that it is in the public interest to adjust or waive the adoption fee stated in paragraph (a) of this section. The adjustment or waiver shall extend only to those persons who are willing to maintain such animals privately, who demonstrate the ability to care for them properly, and who agree to comply with all rules and regulations relating to wild horses and burros.

### § 4750.4–3 Request to terminate Private Maintenance and Care Agreement.

An adopter may request to terminate his/her responsibility for an adopted animal by submitting a written relinquishment of the Private Maintenance and Care Agreement for that animal. The authorized officer shall arrange to transfer the animal to another qualified applicant or take possession of the animal at a location specified by the authorized officer within 30 days of receipt of the written request for relinquishment.

### § 4750.4–4 Replacement animals.

The authorized officer shall replace an animal, upon request by the adopter, if (a) within 6 months of the execution of the Private Maintenance and Care

Agreement the animal dies or is required to be destroyed due to a condition that existed at the time of placement with the adopter; and (b) the adopter provides, within a reasonable time, a statement by a veterinarian certifying that reasonable care and treatment would not have corrected the condition. Transportation of the replacement animal shall be the responsibility of the adopter.

### § 4750.5 Application for title to wild horses and burros.

(a) The adopter shall apply for title, using a form designated by the Director, upon signing the Private Maintenance and Care Agreement.

(b) The authorized officer shall issue a Certificate of Title after 12 months, if the adopter has complied with the terms and conditions of the agreement and the authorized officer determines, based either on a field inspection or a statement provided by the adopter from a veterinarian, extension agent, local humane official, or other individual acceptable to the authorized officer, that the animal or animals covered by the Agreement have received proper care and humane treatment.

(c) An adopter may not obtain title to more than 4 animals per 12-month period of private maintenance. Effective the date of issuance of the Certificate of Title, Federal ownership of the wild horse or burro ceases and the animal loses its status as a wild horse or burro and is no longer under the protection of the Act or regulations under this title.

### Subpart 4760—Compliance

### § 4760.1 Compliance with the Private Maintenance and Care Agreement.

(a) An adopter shall comply with the terms and conditions of the Private Maintenance and Care Agreement and these regulations. The authorized officer may verify compliance by visits to an adopter, physical inspections of the animals, and inspections of the facilities and conditions in which the animals are being maintained. The authorized officer may authorize a cooperative extension agent, local humane official or similarly qualified individual to verify compliance.

(b) The authorized officer shall verify compliance with the terms of the Private Maintenance and Care Agreement when an adopter has received 25 or more animals or when 25 or more animals are maintained at a single location.

(c) The authorized officer shall conduct an investigation when a complaint concerning the care, treatment, or use of a wild horse or

burro is received by the Bureau of Land Management.

(d) The authorized officer may require, as a condition for continuation of a Private Maintenance and Care Agreement, that an adopter take specific corrective actions if the authorized officer determines that an animal is not receiving proper care or is being maintained in unsatisfactory conditions. The adopter shall be given reasonable time to complete the required corrective actions.

**Subpart 4770—Prohibited Acts, Administrative Remedies, and Penalties**

§ 4770.1  Prohibited acts.

The following acts are prohibited:

(a) Maliciously or negligently in juring or harassing a wild horse or burro;

(b) Removing or attempting to remove a wild horse or burro from the public lands without authorization from the authorized officer;

(c) Destroying a wild horse or burro without authorization from the authorized officer except as an act of mercy;

(d) Selling or attempting to sell, directly or indirectly, a wild horse or burro or its remains;

(e) Commercially exploiting a wild horse or burro;

(f) Treating a wild horse or burro inhumanely;

(g) Violating a term or condition of the Private Maintenance and Care Agreement;

(h) Branding a wild horse or burro;

(i) Removing or altering a freeze mark on a wild horse or burro;

(j) Violating an order, term, or condition established by the authorized officer under this part.

§ 4770.2  Civil penalties.

(a) A permittee or lessee who has been convicted of any of the prohibited acts found in § 4770.1 of this title may be subject to suspension or cancellation of the permit or lease.

(b) An adopter's failure to comply with the terms and conditions of the Private Maintenance and Care Agreement may result in the cancellation of the agreement, repossession of wild horses and burros included in the agreement and disapproval of requests by the adopted for additional excess wild horses and burros.

§ 4770.3  Administrative remedies.

Any person who is adversely affected by a decision of the authorized officer in the administration of these regulations may file an appeal in accordance with 43 CFR 4.4 within 30 days of receipt of the written decision.

§ 4770.4  Arrest.

The Director of the Bureau of Land Management may authorize an employee who witnesses a violation of the Act or these regulations to arrest without warrant any person committing the violation, and to take the person immediately for examination or trial before an officer or court of competent jurisdiction. Any employee so authorized shall have power to execute any warrant or other process issued by an officer or court of competent jurisdiction to enforce the provisions of the Act or these regulations.

§ 4770.5  Criminal penalties.

Any person who commits any act prohibited in § 4770.1 of these regulations shall be subject to a fine of not more than $2,000 or imprisonment for not more than 1 year, or both, for each violation. Any person so charged with such violation by the authorized officer may be tried and sentenced by a United States Commissioner or magistrate, designated for that purpose by the court by which he/she was appointed, in the same manner and subject to the same conditions as provided in 18 U.S.C. 3401.

[FR Doc. 86–4532 Filed 2–28–86; 8:45 am]
BILLING CODE 4310-84-M

# Exhibit 9

## 56 FR 786

January 9, 1991

Rules and Regulations

**Reporter**
56 FR 786

*Federal Register  >  1991  >  January  >  January 9, 1991  >  Rules and Regulations  >  FEDERAL REGISTER*

**Title:** Protection, Management, and Control of Wild Free-Roaming Horses and Burros; Prohibited Acts, Administrative Remedies, and Penalties; Administrative Remedies

**Action:**  Interim final rule and request for comments.

## Agency

FEDERAL REGISTER

**Identifier:** [AA-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-02; Circular No. 2631] > RIN 1004-AB81

## Administrative Code Citation

43 CFR Part 4700

## Synopsis

SUMMARY: This interim final rule allows the authorized officer to place in full force and effect decisions to cancel a Private Maintenance and Care Agreement (PMACA) in situations where wild horses or burros subject to such an agreement are found to be abused or mistreated.

52DATE: *Effective date:* January 9, 1991. Comments on the interim final rule should be received on or before March 11, 1991. Comments received or postmarked after the above date may not be considered in the decisionmaking process on the final rule.

## Text

SUPPLEMENTARY INFORMATION: In accordance with *43 CFR 4770.3*, "Any person who is adversely affected by a decision of the authorized officer * * * may file an appeal * * * " Under the regulations of the Bureau of Land Management (BLM) implementing the Administrative Procedure Act, most appealed decisions are stayed pending resolution of the appeal by the Interior Board of Land Appeals (IBLA). The existing rules delay wild horse and burro repossession decisions for up to 2 years pending the IBLA rulings.

The present regulations provide no means for immediate cancellation of a PMACA and repossession of adopted animals when an adopter's abuse or negligence threatens the welfare of a wild horse or burro. The BLM continues to have several cases every year that require immediate removal of an animal from an adopter to prevent severe or

56 FR 786

long-term damage to the animal's health. The health and welfare of these animals will be benefitted by implementation of this rule upon publication.

The principal author of this interim final rule is Vernon R. Schulze, wild horse and burro program specialist, assisted by the staff of the Division of Legislation and Regulatory Management, BLM.

It has been determined that this rule does not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement pursuant to section 102(2)(C) of the National Environmental Policy Act of 1969 *(42 U.S.C. 4332*(2)(C)) is required.

The Department of the Interior has determined under Executive Order 12291 that this document is not a major rule, and under the Regulatory Flexibility Act *(5 U.S.C. 601* et seq.) that it will not have significant economic impact on a substantial number of small entities. Additionally, as required by Executive Order 12630, the Department has determined that the rule would not cause a taking of private property.

This rule does not contain information collection requirements that require approval by the Office of Management and Budget under *44 U.S.C. 3501* et seq. However, an additional paragraph has been added to the Note at the beginning of Group 4700 describing the information collection burden imposed by other regulations in the Group, as required by the Departmental Manual of the Department of the Interior. This Note has no relation to the substantive provisions of this rule.

# Regulations

List of Subjects in 43 CFR Part 4700

Advisory committees, Aircraft, Intergovernmental relations, Penalties, Public lands, Range management, Wild horses and burros, Wildlife.

Under the authorities cited below, part 4700, subchapter D, chapter II, title 43 of the Code of Federal Regulations is amended as set forth below.

**PART 4700 -- PROTECTION, MANAGEMENT, AND CONTROL OF WILD FREE-ROAMING HORSES AND BURROS**

**1.** The authority citation for part 4700 continues to read as follows:

**Authority:** Act of Dec. 15, 1971, as amended *(16 U.S.C. 1331*-1340), Act of Oct. 21, 1976 *(43 U.S.C. 1701* et seq.), Act of Sept. 8, 1959 *(18 U.S.C. 47),* Act of June 28, 1934 *(43 U.S.C. 315).*

**2.** The Note at the beginning of Group 4700 is amended by adding a new paragraph at the end thereof to read as follows:

* * * * *

Public reporting burden for this information is estimated to average 0.165 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Information Collection Clearance Officer, Division of Information Resources Management, Bureau of Land Management (770), 1849 C Street NW., Washington, DC 20240, and the Office of Management and Budget, Paperwork Reduction Project 1004-0042, Washington, DC 20503.

**3.** Section 4770.3 is revised to read as follows:

**§ 4770.3 Administrative remedies.**

56 FR 786

**(a)** Any person who is adversely affected by a decision of the authorized officer in the administration of these regulations may file an appeal. Appeals must be filed within 30 days of receipt of the decision in accordance with 43 CFR part 4, subpart E.

**(b)** The authorized officer may place in full force and effect decisions to cancel a Private Maintenance and Care Agreement so as to allow repossession of wild horses or burros from adopters to protect the animals' welfare. Appeals and petitions for stay of decisions shall be filed with the Interior Board of Land Appeals as specified in this part.

Dated: November 7, 1990.

Dave O'Neal,

Assistant Secretary of the Interior.

[FR Doc. 91-438 Filed 1-8-91; 8:45 am]

BILLING CODE 4310-84-M

# Contacts

ADDRESSES: Comments should be sent to: Director (140), Bureau of Land Management, U.S. Department of the Interior, room 5555, 1849 C St. NW., Washington, DC 20240.

Comments will be available for public review in room 5555 of the above address during regular business hours (7:45 a.m. to 4:15 p.m.), Monday through Friday.

FOR FURTHER INFORMATION CONTACT: John S. Boyles, Chief, Division of Wild Horses and Burros, at the Bureau of Land Management (250), Premier Building, room 901, U.S. Department of the Interior, 1849 C St. NW., Washington, DC 20240: Telephone (202) 653-9215.

FEDERAL REGISTER

**End of Document**

# Exhibit 10

**Bureau of Land Management, Interior**                    **Part 4700**

allowed to remove all personal property belonging to him, together with any fence, building, corral, or other removable range improvements owned by him. All such property which is not removed within the time allowed shall thereupon become the property of the United States.

## Subpart 4330—Protests

§ 4330.1  Protests.

Protests against an application for a grazing permit shall be filed in duplicate, with the authorized officer; contain a complete disclosure of all facts upon which the protest is based; and describe the lands involved in such protests. It shall be accompanied by evidence of service of a copy of the protest upon the applicant. If the protestant desires to obtain a grazing permit for all or part of the land embraced in the application against which the protest is filed, the protest shall be accompanied by an application for a grazing permit.

## Subpart 4340—Trespass

§ 4340.1  Trespass.

(a) Any use of the Federal lands for reindeer grazing purposes, unless authorized by a valid permit issued in accordance with the regulations in this part is unlawful and is prohibited.

(b) Any person who willfully violates any of the rules and regulations in this part shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punishable by imprisonment for not more than 1 year, or by a fine of not more than $500.

## Group 4700—Wild Free-Roaming Horse and Burro Management

NOTE: The information collection requirements contained in Subpart 4740 of Group 4700 have been approved by the Office of Management and Budget under 44 U.S.C. 3507 and assigned clearance numbers 1004-0042 and 1004-0046. The information is being collected to permit the authorized officer to determine whether an application for adoption of or title of to wild horses or burros should be granted. The information will be used to make this determination. A response is required to obtain a benefit.

[48 FR 40890, Sept. 12, 1983]

## PART 4700—WILD FREE-ROAMING HORSE AND BURRO PROTECTION, MANAGEMENT, AND CONTROL

**Subpart 4700—Purpose; Objectives; Authority; Definitions; Policy**

Sec.
4700.0–1  Purpose.
4700.0–2  Objectives.
4700.0–3  Authority.
4700.0–5  Definitions.
4700.0–6  Policy.

**Subpart 4710—Coordination**

4710.1  Joint National Advisory Board.
4710.2  State agencies.
4710.3  Cooperative agreements.
4710.4  Research.

**Subpart 4720—Removal of Claimed Trespass Horses and Burros**

4720.1  Unauthorized and unbranded animals.
4720.2  Claimed animals.
4720.3  Trespass animals.

**Subpart 4730—Management Considerations**

4730.1  Inventory and planning.
4730.2  Intensity of management.
4730.3  Habitat reservation and allocation.
4730.4  Closure to livestock grazing.
4730.5  Designation of specific ranges.
4730.6  Herd management plan.
4730.7  Aircraft and motor vehicles.
4730.7–1  Fixed-wing aircraft.
4730.7–2  Helicopters.
4730.7–3  Motor vehicles.

**Subpart 4740—Removal and Relocation of Excess or Problem Animals**

4740.1  Capture.
4740.2  Humane use of helicopters and motor vehicles.
4740.3  Removal.
4740.3–1  Acts of mercy.
4740.3–2  Loss of status.
4740.3–3  Disposal of carcasses.
4740.4  Relocation.
4740.4–1  Relocation on public lands.
4740.4–2  Applications.
4740.4–3  Custodial arrangements.
4740.5  Granting of title.

**Subpart 4750—Management on Private Lands**

4750.1  Criteria for animals on private lands.
4750.2  Maintenance.
4750.3  Removal.

35

Sec.

**Subpart 4760—Enforcement Provisions**

4760.1  Arrest.
4760.2  Penalties.

AUTHORITY: Act of Dec. 15, 1971 (16 U.S.C. 1331–1340), Act of June 28, 1934 (43 U.S.C. 315–315r), unless otherwise noted.

SOURCE: 41 FR 9879, Mar. 8, 1976, unless otherwise noted.

## Subpart 4700—Purpose; Objectives; Authority; Definitions; Policy

### § 4700.0–1  Purpose.

To implement the laws relating to wild free-roaming horses and burros on public lands.

### § 4700.0–2  Objectives.

The objective of these regulations is to provide criteria and procedures for protecting, managing, and controlling wild free-roaming horses and burros as a recognized component of the public land environment.

### § 4700.0–3  Authority.

The Act of December 15, 1971 (16 U.S.C. 1331–1340), as amended, and the Act of June 28, 1934 (43 U.S.C. 315 through 315r).

[42 FR 26654, May 25, 1977]

### § 4700.0–5  Definitions.

(a) "Authorized officer" means any employee of the Bureau of Land Management to whom has been delegated the authority to perform the duties described herein.

(b) "Wild free-roaming horses and burros" means all unbranded and unclaimed horses and burros and their progeny that have used public lands on or after December 15, 1971, or that do use these lands as all or part of their habitat, including those animals given an identifying mark upon capture for live disposal by the authorized officer. Unbranded, claimed horses and burros where the claim is found to be erroneous are also considered as wild and free-roaming if they meet the criteria above. However, this definition shall not include any horse or burro which entered or was introduced onto public lands after December 15, 1971, by accident, negligence, or willful disregard of ownership.

(c) "Herd" means one or more stallions and their mares or jacks and their jennies.

(d) "Excess animals" means wild free-roaming horses or burros (1) which have been removed from an area by the authorized officer pursuant to applicable law or, (2) which must be removed from an area in order to preserve and maintain a thriving natural ecological balance and multiple-use relationship in that area.

(e) "Problem animal" means a wild free-roaming horse or burro whose demonstrated individual habits or traits pose an undue threat to the safety or welfare of persons, wildlife, livestock, or property; or a wild free-roaming horse or burro infected by a contagious disease or suspected of being diseased or seriously ill.

(f) "Public lands" means any lands administered by the Secretary of the Interior through the Bureau of Land Management.

(g) "Wild horse or burro range" means a specifically designated area of land needed to sustain a herd or herds of wild free-roaming horses or burros, and which is devoted principally but not necessarily exclusively to their welfare in keeping with the multiple use management of the public lands.

(h) "Management plan" means a written program of action designed to protect, manage, and control wild free-roaming horses and burros and maintain a natural ecological balance on the public lands.

(i) "Act" means the Act of December 15, 1971 (16 U.S.C. 1331 through 1340); as amended.

(j) "Advisory Board" means the joint advisory board established by the Secretary of the Interior and the Secretary of Agriculture pursuant to section 7 of the Act.

(k) "Malicious harassment" means any intentional act which demonstrates a deliberate disregard for the well-being of wild free-roaming horses and burros and which creates the likelihood of injury, or is detrimental to normal behavior patterns of wild free-roaming horses and burros including feeding, watering, resting, and breeding. Such acts include, but are not lim-

ited to, unauthorized chasing, pursuing, herding, roping, or attempting to gather or catch wild free-roaming horses and burros. It does not apply to lawfully conducted activities by or on behalf of the Bureau of Land Management or the Forest Service in implementation or performance of duties and responsibilities under this Act.

(l) "Captured animal" means a wild free-roaming horse or burro taken and held in the custody of the authorized officer. This term does not apply to an animal placed in private custody through a cooperative agreement under § 4740.2(b) or § 4750.2.

(m) "Humane procedure" means kind and merciful treatment, without causing unnecessary stress or suffering to the animal.

(n) "Commercial exploitation" means using a wild free-roaming horse or burro, because of its characteristics of wildness, for direct or indirect financial gain. Characteristics of wildness include the rebellious and feisty nature of such animals and their defiance of man as exhibited in their undomesticated and untamed state. Uses such as saddle or pack stock or other uses that require domestication of the animal are not commercial exploitation of the animals because of their characteristics of wildness.

(o) "Inhumane treatment" means causing physical stress to an animal through any harmful action or omission that is not compatible with standard animal husbandry practices; causing or allowing an animal to suffer from a lack of necessary food, water or shelter; using any equipment, apparatus, or technique during transportation, domestication or handling that causes undue injury to an animal; or failing to treat or care for a sick or injured animal.

(p) "Old" means a wild free-roaming horse or burro characterized by its inability to fend for itself because of age, physical deterioration, suffering or closeness to death.

(q) "Sick" means a wild free-roaming horse or burro with failing health, infirmness or disease from which there is little chance of recovery.

(r) "Lame" means a wild free-roaming horse or burro with malfunctioning muscles, ligaments or limbs that impair its freedom of movement.

[41 FR 9879, Mar. 8, 1976, as amended at 42 FR 26654, May 25, 1977; 44 FR 76985, Dec. 28, 1979]

§ 4700.0-6  Policy.

(a) Wild free-roaming horses and burros are under the jurisdiction of the Secretary of the Interior and will be managed as an integral part of the natural systems of the public lands. They will be protected from unauthorized capture, branding, undue disturbance, and destruction. They and their habitat will be managed and controlled in a manner designed to achieve and maintain a thriving ecological balance on the public lands and a thriving population of sound, healthy individuals, all in accordance with the basic program policies for public land management set forth in Subpart 1725 of this chapter.

(b) Wild free-roaming horses and burros on the public lands will be managed by the authorized officer, with full public participation and such cooperative arrangements as he may find helpful. Management on public lands will not be assigned to any private individual or association through a grazing license, lease, or permit.

(c) Wild free-roaming horses and burros where found on public lands shall be considered comparably with other resource values in the development of resource management plans under the Bureau's planning system including allocation of appropriate portions of the available forage.

(d) Where wild free-roaming horses and burros use, as part of their habitat, public lands administered by the Bureau of Land Management and lands in the National Forest system, the Bureau of Land Management shall cooperate to the fullest extent with the Forest Service in the management of these animals.

[41 FR 9879, Mar. 8, 1976, as amended at 44 FR 76985, Dec. 28, 1979]

## Subpart 4710—Coordination

### § 4710.1  Joint National Advisory Board.

Policies and guidelines relative to proposals for establishment of ranges, proposed management plans, adjustments in number, relocation and disposal of animals, and other matters relating generally to the protection, management, and control of wild free-roaming horses and burros shall be presented to the Advisory Board for recommendations.

### § 4710.2  State agencies.

(a) All management activities including, but not limited to, establishment of ranges and adjustments in forage allocation shall be planned and executed in consultation with the appropriate State agency to further consider the needs of all wildlife, particularly endangered species.

(b) All actions taken in connection with private ownership claims to unbranded horses and burros shall be coordinated to the fullest extent possible with the appropriate State agency.

### § 4710.3  Cooperative agreements.

The authorized officer may enter into cooperative agreements with other landowners, private citizens, nonprofit organizations, and with Federal, State, and local governmental agencies as he deems necessary for purposes of protecting, managing and controlling wild free-roaming horses and burros. Where the grazing patterns of the animals require utilization of lands in other ownerships or administration, the authorized officer shall seek cooperative agreements to insure continuance of such use.

### § 4710.4  Research.

Research activities in the management of wild free-roaming horses and burros shall be conducted pursuant to a contract entered into between authorized individuals or organizations and the authorized officer.

[41 FR 9879, Mar. 8, 1976, as amended at 45 FR 47842, July 17, 1980]

## Subpart 4720—Removal of Claimed Trespass Horses and Burros

### § 4720.1  Unauthorized and unbranded animals.

(a) All unauthorized and unbranded horses and burros on the public lands, except those which entered or were introduced onto the public lands after December 15, 1971, by accident, negligence, or willful disregard of ownership are presumed for the purpose of management to be wild free-roaming horses or burros.

(b) The gathering or rounding up of unbranded horses or burros on the public lands where any of such animals are not in fact authorized to be on the public lands pursuant to a grazing license, permit, lease, or other authorization, is prohibited without written authorization from the authorized officer. Also prohibited without written authorization from the authorized officer is the gathering or rounding up of unauthorized branded horses or burros where the branded animals are, or may become, intermingled with wild free-roaming horses or burros, or where the gathering or roundup is likely to involve or affect wild free-roaming horses or burros.

### § 4720.2  Claimed animals.

(a) Any person claiming ownership under State branding and estray laws of unbranded or branded horses or burros on public land where such animals are not authorized must present evidence of ownership to justify a roundup before permission will be granted to gather such animals. Claims of ownership with supporting evidence were required to be filed during a 90-day claiming period which expired November 15, 1973. Unauthorized privately owned horses or burros entering onto the public lands after November 15, 1973, may be claimed by filing an application with the District Manager. All written authorizations to gather claimed animals shall be on a form approved by the Director and shall provide for compliance with appropriate provisions of Subpart 4720. After such public notice as the authorized officer deems appropriate to inform interested parties, he may au-

thorize the gathering or roundup. The authorized officer shall provide in the authorization that the gathering or roundup shall be consistent with these regulations; shall establish in the authorization a reasonable period of time to allow the gathering of the claimed animals; and shall provide such other conditions in the authorization which he deems necessary to minimize stress on any associated wild free-roaming horses or burros and to protect other resources.

(b) Animals captured in Bureau of Land Management conducted round-ups and determined to be privately owned may be secured by the appropriate claimant upon payment of trespass charges in accordance with § 4720.3, and a per head share of helicopter rental and other associated costs determined appropriate by the authorized officer.

[42 FR 26655, May 25, 1977]

§ 4720.3   Trespass animals.

Unauthorized horses or burros which have been claimed and have been determined to be privately owned in accordance with the provisions of this section will be considered to have been in trespass and may not be released until a proper trespass charge has been determined by the authorized officer in accordance with the provisions of Subpart 4150 of this subchapter.

[43 FR 29076, July 5, 1978]

**Subpart 4730—Management
Considerations**

§ 4730.1   Inventory and planning.

(a) A current inventory of wild free-roaming horses and burros shall be maintained by the authorized officer for each area where a herd exists for the purpose of evaluating population dynamics including whether and where excess animals exist as a basis for making management decisions. Such inventory will be designed to estimate animal numbers, productivity, sex ratio and age structure for each herd.

(b) In planning for management, protection, and control of wild free-roaming horses and burros, including determination of desirable numbers and other management requirements of these regulations, the authorized officer will utilize the Bureau's multiple-use planning system.

(c) Using the information developed from inventory data and planning the authorized officer shall determine:

(1) Appropriate protection and management for wild free-roaming horses and burros on the management areas under consideration; and

(2) The appropriate actions needed to achieve proper population levels.

(d) In making these determinations, the authorized officer shall consult with the U.S. Fish and Wildlife Service, State wildlife agencies, individuals independent of Federal or State government recommended by the National Academy of Sciences, and any other individuals who he determines have scientific expertise or special knowledge of wild horse and burro protection, wildlife management and animal husbandry as related to rangeland management.

[44 FR 76985, Dec. 28, 1979]

§ 4730.2   Intensity of management.

Wild free-roaming horse or burro herds may be managed either as one of the components of public land use or on a specifically designated wild horse or burro range. Management practices shall be at the minimal feasible level and shall be consistent to the extent possible and practical with the maintenance of their free-roaming behavior. Management facilities should be designed and constructed to the extent possible to maintain the free-roaming behavior of the herds.

§ 4730.3   Habitat reservation and allocation.

The biological requirements of wild free-roaming horses and burros will be determined based upon appropriate studies or other available information. The needs for soil and watershed protection, domestic livestock, maintenance of environmental quality, wildlife, and other factors will be considered along with wild free-roaming horse and burro requirements. After determining the optimum number of such horses and burros to be main-

tained on an area, the authorized officer shall reserve adequate forage and satisfy other biological requirements of such horses and burros and, when necessary, adjust or exclude domestic livestock use accordingly. See §§ 4110.2-2 and 4110.3-2 of this subchapter.

[43 FR 29076, July 5, 1978]

### § 4730.4 Closure to livestock grazing.

The authorized officer may close public lands to use by all or a particular kind of domestic livestock where it is necessary to allocate all available forage to, or to satisfy other biological requirements of wild free-roaming horses or burros. Such closures may be made only after appropriate public notice and in accordance with the procedures for reduction or cancellation of grazing privileges provided for under provisions in this subchapter. See §§ 4110.2-2 and 4110.3-2 of this subchapter.

[43 FR 29076, July 5, 1978]

### § 4730.5 Designation of specific ranges.

The authorized officer may designate and maintain specifically designated ranges principally for the protection and preservation of wild free-roaming horses and burros. In designating specific ranges and herd management areas, the authorized officer, in addition to any other provisions of these regulations, shall:

(a) Consider only those areas utilized by wild free-roaming horses or burros as all or part of their habitat on December 15, 1971.

(b) Consider only those areas where self-sustaining herds can maintain themselves within their established utilization and migratory patterns.

(c) Consider only those areas which are capable of being managed as a unit to ensure a sustained yield of forage without jeopardy to the resources.

(d) Develop a wild free-roaming horse or burro management plan in accordance with § 4730.6.

### § 4730.6 Herd management plan.

The authorized officer shall, in connection with the designation of a specific range, develop a proposed wild free-roaming horse or burro manage-

ment plan designed to protect, manage, and control wild free-roaming horses and burros on the area on a continuing basis. The authorized officer may also develop herd management plans as part of the multiple use management on areas outside of specifically designated wild horse or burro ranges. All management plans shall be developed in accordance with the Bureau's planning system and shall govern management of the area.

### § 4730.7 Aircraft and motor vehicles.

### § 4730.7-1 Fixed-wing aircraft.

Fixed-wing aircraft may be used for inventory, observation, and surveillance purposes required for the administration of the Act. Such aircraft use shall be consistent with the Act of September 8, 1959, as amended (18 U.S.C. 41 et seq.). Fixed-wing aircraft shall not be used in connection with capture operations except as support vehicles.

[42 FR 26655, May 25, 1977]

### § 4730.7-2 Helicopters.

Only the authorized officer may use or contract for the use of helicopters in the administration of the Act. Helicopters may be used in all phases of the administration of the Act including, but not limited to, inventory, observation, surveillance, and capture operations (see § 4740.4). Helicopters may be used in areas where all animals are claimed, only if forage, habitat, or watershed resources are being adversely affected by horses and burros and helicopters are the only feasible method available to capture and remove the animals. The authorized officer shall supervise all helicopter use as follows:

(a) The authorized officer shall have the means to communicate with the pilot and be able to direct the use of the helicopter.

(b) The authorized officer shall be able to observe the effects of the use of the helicopter on the well-being of the animals.

(c) Notwithstanding any provision of this section, researchers who have entered into contracts with the Bureau of Land Management under the au-

thority of the act may use helicopters in the performance of such research activities without the supervision of the authorized officer; *Provided that:* Helicopters permitted for research shall not:

(1) Be used to kill or remove from the public lands wild free-roaming horses or burros; or

(2) Create undue or needless stress in wild free-roaming horses or burros.

[42 FR 26655, May 25, 1977, as amended at 45 FR 47843, July 17, 1980]

§ 4730.7–3   Motor vehicles.

Motor vehicles may be used in the administration of the Act except that such vehicles shall not be used in connection with capture operations for driving or chasing the animals. The use of motor vehicles for the purpose of transporting captured animals is subject to the provisions of § 4740.4(b).

[42 FR 26655, May 25, 1977]

Subpart 4740—Removal and Relocation of Excess or Problem Animals

Source: 44 FR 76985, Dec. 28, 1979, unless otherwise noted.

§ 4740.1   Capture.

Under the supervision of the authorized officer, where it has been determined necessary, wild free-roaming horses and burros may be captured, corralled and held in a humane manner. All excess or problem animals will be held under humane conditions pending disposal under the provisions of this subpart.

§ 4740.2   Humane use of helicopters and motor vehicles.

(a) The use of helicopters is authorized to locate the animals involved and for related purposes such as to transport personnel and equipment. The condition of the animals shall be continuously observed by the authorized officer and should signs of unnecessary stress be noted, the source of stress shall be removed so as to allow for recovery. Helicopters may be used in roundups or other capture operations subject to the following humane procedures:

(1) Helicopters shall be used in such a manner that bands or herds will tend to remain together.

(2) The rate of movement shall not exceed limitations set by the authorized officer who shall consider terrain, weather, distance to be traveled, and condition of animals.

(3) The helicopter shall be used to enable the authorized officer to look for the presence of dangerous areas and move the animals away from hazards during the capture operation.

(4) During capture operations, animals shall be moved in such a way as to prevent unnecessary stress or injury.

(b) Motor vehicles may be used for the purposes of transporting captured animals, subject to the following humane procedures:

(1) All such transportation shall be in compliance with appropriate State and Federal laws and regulations applicable to the humane transportation of horses and burros.

(2) Vehicles shall be in good repair, of adequate rated capacity, and carefully operated so as to insure that captured animals are transported without undue risk of injury.

(3) Vehicles shall be inspected and approved by an authorized officer prior to use.

(4) Where necessary and practical, animals shall be sorted as to age, size, temperament, sex, and condition when transporting them so as to minimize, to the extent possible, injury due to fighting and trampling.

(5) The authorized officer shall consider the condition of the animals, weather conditions, type of vehicles, and distance to be transported when planning for the movement of captured animals.

(c) The transportation of wild free-roaming horses and burros shall be under humane conditions. Unless otherwise approved by the authorized officer, transportation shall be limited, in sequence, to a maximum of 24 hours followed by a minimum of 5 hours of on-the-ground rest with adequate feed and water.

41

§ 4740.3                                                                                              43 CFR Ch II (10-1-85 Edition)

§ 4740.3  Removal.

(a) The authorized officer, after making a determination that there are excess animals in an area shall immediately take action to remove those animals from the public lands. Such action shall be taken in the following order and priority, until all excess animals have been removed so as to restore a thriving natural ecological balance to the range, and protect the range from deterioration associated with overpopulation:

(1) Old, sick, or lame animals shall be destroyed in the most humane manner possible. If there are equally humane methods, the most cost efficient may be selected.

(2) Any additional excess animals shall be humanely captured and removed for maintenance and care for which the authorized officer determines an adoption demand exists by qualified persons, organizations, or agencies and for which he determines he can assure humane treatment and care (including proper transportation, feeding, and handling).

(3) Additional excess animals for which an adoption demand by qualified individuals does not exist shall be destroyed in the most humane manner possible. If there are equally humane methods, the most cost efficient may be selected.

(b) Where the authorized officer finds it necessary to remove excess animals from areas of the public lands, and he determines that it is not practical to relocate them on public lands or capture and remove them for maintenance, he may destroy such animals in the most humane manner possible. No person, except the authorized officer or his authorized representative, shall destroy wild free-roaming horses and burros.

(c) The authorized officer, after making a determination that there are problem animals in an area and that action is required, shall humanely remove the animals and may dispose of them in the same manner as excess animals including the relocation or return to the public lands.

§ 4740.3-1  Acts of mercy.

Any severely injured or seriously sick animals will be destroyed in the most humane manner possible as an act of mercy.

§ 4740.3-2  Loss of status.

Wild free-roaming horses and borros or their remains shall lose their status as such:

(a) Upon passage of title under § 4740.5 of this part;

(b) If they have been transferred for private maintenance or adoption pursuant to this Act and die of natural causes before passage of title;

(c) Upon destruction by the authorized officer or his designee pursuant to section 3(b) of the Act;

(d) If they die of natural causes on the public lands or on private lands where maintained thereon pursuant to section 4 of the Act and disposal is authorized by the authorized officer or his designee; or

(e) Upon destruction or death for purposes of or incident to the program authorized in section 3 of the Act.

§ 4740.3-3  Disposal of carcasses.

Carcasses of animals that have lost their status as wild free-roaming horses and burros may be disposed of in any customary manner. However, no consideration of any kind shall be received by any person who transfers the remains of a wild free-roaming horse or burro, that has not lost its status as such, to a rendering plant or other facility for disposal.

§ 4740.4  Relocation.

Wild free-roaming horses and burros may be relocated when:

(1) The authorized officer determines there are excess animals in an area;

(2) They have been removed from private lands under § 4750.3 of this title;

(3) They are problem animals; or

(4) The authorized officer determines that proper resource and herd management requires such action.

§ 4740.4-1  Relocation on public lands.

(a) Wild free-roaming horses and burros shall not be introduced by relocation to areas of public land that were not being used by wild free-roam-

ing horses or burros as all or part of their habitat on December 15, 1971.

(b) Before wild free-roaming horses and burros are relocated to a different area of the public lands a written determination shall be made by the authorized officer that the action meets the requirements of the Bureau of Land Management's resource management plans and that the area has an adequate allocation of forage for the animals relocated.

## § 4740.4–2  Applications.

Any qualified person, organization or government agency wishing to take custody of a wild free-roaming horse or burro shall file an application with the Denver Service Center of the Bureau of Land Management. The application shall be filed on a form approved by the Director, Bureau of Land Management, and shall be accompanied by a nonrefundable advance payment of $25 by guaranteed remittance. In order to maintain an application filed with the Bureau before the effective date of this section, the applicant shall submit an advance payment of $25 by guaranteed remittance no later than 30 days after the effective date of this section. If custody of a wild free-roaming horse or burro is granted by the authorized officer, the advance payment shall be applied against the custodial fee required to be paid at the time the cooperative agreement required by § 4740.4–3 of this title is executed.

(Act of December 15, 1971, as amended (16 U.S.C. 1331–1340), the Act of June 26, 1934 (43 U.S.C. 315–315r) and the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1701 et seq.))

[48 FR 9262, Mar. 4, 1983]

## § 4740.4–3  Custodial arrangements.

(a) The authorized officer may transfer for private maintenance or adoption up to 4 wild free-roaming horses or burros per year to any qualified person, organization, or government agency.

(b) Wild free-roaming horses and burros shall be transferred only to an applicant of a legal age in the State in which the applicant resides.

(c) Notwithstanding the provision of paragraph (a) of this section, more than four animals per year may be transferred to any qualified person, organization, or agency for adoption if the authorized officer determines in writing that the applicant is capable of humanely transporting and caring for the additional animals.

(d) Before wild free-roaming horses or burros are transferred, the applicant shall:

(1) Pay a custodial fee of $125 for each horse and $75 for each burro, except there shall be no custodial fee for an unweaned offspring under 6 months of age accompanying its mother, plus any transportation costs incurred for the transportation of the animals to the point of pickup; and

(2) Sign a cooperative agreement that incorporates provisions for custodial maintenance, including, but not limited to, provisions for proper maintenance of the animals and protection from inhumane treatment and commercial exploitation.

(3) The Director may adjust or waive the adoption fee on determining that wild horses or burros in the custody of the Bureau of Land Management are unadoptable when the full adoption fee is required, and that it is in the public interest to adjust or waive the adoption fee stated in paragraph (a) of this section. The adjustment or waiver shall extend only to persons who are willing to maintain such animals privately, who demonstrate the ability to care for them properly, and who agree to comply with all rules and regulations relating to wild horses and burros.

(e) If the authorized officer determines that an adopted wild free-roaming horse or burro is being commercially exploited, inhumanely treated, or treated in a manner that violates a provision of the cooperative agreement, he may take immediate possession of the animal.

(f) If a wild free-roaming horse or burro that has been transferred for private maintenance or adoption dies, the transferee shall, within 7 days of the death, furnish the authorized officer with a veterinarian's written statement of the apparent cause of death.

(g) Persons, organizations, or agencies who receive wild free-roaming horses or burros that have been previ-

ously transferred for private mainte-
nance or adoption shall be subject to
all the provisions of these regulations.
No wild free-roaming horse or burro
shall be transferred without the ap-
proval of the authorized officer.

(h) At the request of the transferee,
the authorized officer may transfer
custody of wild free-roaming horses
and burros to another qualified appli-
cant.

(Act of December 15, 1971, as amended (16
U.S.C. 1331–1340), the Act of June 26, 1934
(43 U.S.C. 315–315r) and the Federal Land
Policy and Management Act of 1976 (43
U.S.C. 1701 *et seq.*); Act of September 8,
1959 (18 U.S.C. 47))

[44 FR 76985, Dec. 28, 1979. Redesignated
and amended at 48 FR 9262, Mar. 4, 1983; 49
FR 20654, May 16, 1984]

§ 4740.5  Granting of title.

(a) The authorized officer may grant
title to not more than four wild free-
roaming horses and burros in any one
year upon application of any qualified
person, organization, or agency to
whom these animals have been trans-
ferred for adoption. Applicants for
granting of title must be of legal age
in the State in which they reside.

(b) Persons, organizations, or agen-
cies who have provided humane condi-
tions, treatment, and care for the ani-
mals they have adopted after Decem-
ber 15, 1971, for at least one year
under a cooperative agreement with
the Bureau of Land Management are
qualified to apply for title to the ani-
mals. The application for a title shall
include a written statement of a li-
censed veterinarian attesting to the
best of his knowledge that the animals
have been given humane treatment
and care preceding the filing of the
application.

(c) The application for title shall be
on a form prescribed by the Director,
Bureau of Land Management, and
shall be filed at the office specified on
the form.

## Subpart 4750—Management on Private Lands

§ 4750.1  Criteria for animals on private lands.

Nothing in these regulations shall
preclude a private landowner from al-
lowing wild free-roaming horses and
burros to remain on his private lands
so long as the animals were not will-
fully removed, enticed, or retained by
him or his agent from the public
lands.

§ 4750.2  Maintenance.

Any individual who actively main-
tains wild free-roaming horses and
burros on his private lands shall notify
the authorized officer and supply him
with a reasonable approximation of
their number and location and, when
required by the authorized officer, a
description of the animals. Thereafter,
he shall furnish an annual report up-
dating the information during the
month of January. An individual will
be considered to be actively maintain-
ing wild free-roaming horses or burros
if he takes measures of any kind de-
signed to protect or enhance the wel-
fare of the animals. No person shall
maintain such animals except under
cooperative agreement between the
private landowner and the authorized
officer setting forth the management
and maintenance requirements includ-
ing provisions for regulating disposal
of excess animals.

§ 4750.3  Removal.

The authorized officer shall remove,
as soon as he can make the necessary
arrangements, wild free-roaming
horses and burros, from private land
at the request of the landowner where
the private land is enclosed in a "legal
fence." A "legal fence" for this pur-
pose is one which complies with State
standards and specifications. In "no
fence districts" or other areas where
the private landowner is not required
by State statute to fence the private
land to protect it from trespass by do-
mestic livestock, the authorized officer
shall, as soon as he can make the nec-
essary arrangements, remove wild
free-roaming horses or burros from
such private land at the request of the
landowner.

## Subpart 4760—Enforcement Provisions

### § 4760.1 Arrest.

The Director of the Bureau of Land Management may authorize such employees as he deems necessary to arrest without warrant, any person committing in the presence of the employee a violation of the Act or of these regulations and to take such person immediately for examination or trial before an officer or court of competent jurisdiction. Any employee so designated shall have power to execute any warrant or other process issued by an officer or court of competent jurisdiction to enforce the provisions of the Act or these regulations.

### § 4760.2 Penalties.

In accordance with section 8 of the Act (16 U.S.C. 1338), any person who:

(a) Willfully removes or attempts to remove a wild free-roaming horse or burro from the public lands, without authority from the authorized officer, or

(b) Converts a wild free-roaming horse or burro to private use, without authority from the authorized officer, or

(c) Maliciously causes the death or harassment of any wild free-roaming horse or burro, or

(d) Processes or permits to be processed into commercial products the remains of a wild free-roaming horse or burro, or

(e) Sells, directly or indirectly, a wild free-roaming horse or burro, or the remains thereof which have not lost their status as a wild free-roaming horse or burro, or

(f) Uses a wild free-roaming horse or burro for commercial exploitation, or

(g) Causes or is responsible for the inhumane treatment of a wild free-roaming horse or burro, or

(h) Uses a wild free-roaming horse or burro for bucking stock, or

(i) Fails, upon written notice, to produce for inspection by an authorized officer those animals assigned to him for private maintenance under a cooperative agreement, or

(j) Fails to notify the authorized officer of the death of a wild free-roaming horse or burro within 7 days of death pursuant to § 4740.4–2(f) of this title, or

(k) Removes or attempts to remove, alters or destroys any official mark identifying a wild horse or burro, or its remains, or

(l) Being the assignee of a wild free-roaming horse or burro, or having charge or custody of the animal, abandons the animal without making arrangements for necessary food, water and shelter, or

(m) Being the assignee of a wild free-roaming horse or burro, or having charge or custody of the animal, fails to diligently pursue in an attempt to capture the escaped animal, or

(n) Accepts for slaughter or destruction a horse or burro bearing an official Bureau of Land Management identification mark, and which is not accompanied by a certificate that title to the animal has been transferred, or

(o) After acceptance of an animal for slaughter or destruction, fails to retain for one year the certificate of title to a horse or burro bearing an official Bureau of Land Management identification mark, or

(p) Willfully violates any provisions of the regulations under Group 4700, shall be subject to a fine of not more than $2,000 or imprisonment for not more than 1 year, or both. Any person so charged with such violation by the authorized officer may be tried and sentenced by a U.S. commissioner or magistrate, designated for that purpose by the court by which he was appointed, in the same manner and subject to the same conditions as provided in section 3401, Title 18, U.S.C.

[41 FR 9879, Mar. 8, 1976, as amended at 44 FR 76987, Dec. 28, 1979]

# Exhibit 11





**Tuesday**
**December 18, 1984**



## Part IV

# Department of the Interior

**Bureau of Land Management**

**43 CFR Part 4700**

**Protection, Management, and Control of Wild Free-Roaming Horses and Burros; Revision of Existing Regulations; Proposed Rule**

49252       Federal Register / Vol. 49, No. 244 / Tuesday, December 18, 1984 / Proposed Rules

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

### 43 CFR Part 4700

### Protection, Management, and Control of Wild Free-Roaming Horses and Burros; Revision of Existing Regulations

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Proposed rulemaking.

**SUMMARY:** This proposed rulemaking revises the provisions on wild free-roaming horses and burros in Part 4700 to reduce the regulatory burden on the public, to clarify the management procedures of the Bureau of Land Management as they affect the public, to remove unnecessary self-regulating provisions, and to arrange the regulations by subject.

**DATE:** Comment period expires February 19, 1985. Comments received or postmarked after this date may not be considered in the decisionmaking process on a final rulemaking.

**ADDRESS:** Comments should be sent to: Director (140), Bureau of Land Management, 1800 C Street, NW., Washington, D.C. 20240.

Comments will be available for public review in Room 5555 of the above address during regular business hours (7:45 a.m. to 4:15 p.m.), Monday through Friday.

**FOR FURTHER INFORMATION CONTACT:** John S. Boyles, (202) 653–9215.

**SUPPLEMENTARY INFORMATION:** This proposed rulemaking completely revises Part 4700 of Title 43 of the Code of Federal Regulations. The regulations are completely reorganized to group provisions on the same subject into the same subpart. Redundant sections, obsolete definitions and provisions, and terms or provisions not authorized by law have been removed. Changes have been made to ease cumbersome and burdensome requirements on the public as much as possible, and provisions not affecting the public have been removed, to be included in the Manual of the Bureau of Land Management (BLM) where appropriate.

In the proposed rulemaking, §§ 4700.0–1, 4700.0–2 and 4700.0–6 have been rewritten to describe purpose, objectives and policy more specifically, and to inform the public of the bases for procedures and requirements contained in the regulations. The proposed rulemaking states as a matter of policy that the authorized officer, in administering the program, shall consult with Federal and State wildlife agencies and all other affected interests. Because this policy applies to all aspects of the wild free-roaming horse and burro program, the requirement for consultation has been removed from all other sections of the proposed rulemaking as a needless duplication. Amendments are proposed in the Definitions, § 4700.0–5, to clarify the meaning of some terms used in the regulations, to remove definitions that duplicate text contained elsewhere in the Part, and to remove terms whose use is obsolete or not authorized, or that are self-explanatory. The term "free-roaming" has been removed from several definitions and other provisions referring to "wild horses and burros," and is used in this proposed rulemaking to refer only to animals remaining at large and not in private maintenance.

The proposed rulemaking removes provisions that give procedural guidance and instruction to BLM personnel and do not affect the public. Any such provisions that contain information that may be useful to the public have been incorporated in the proposed rulemaking in the appropriate sections. Pertinent removed provisions will be included in the BLM Manual.

The proposed rulemaking amends existing Subpart 4730 as new Subpart 4710 to link the management of wild free-roaming horses and burros with the Bureau's planning system; to identify precisely the lands that will be considered for wild horse and burro management; to require that hard management area plans be prepared for all herd management areas; to allow the authorized officer to protect wild horses and burros and their habitat by closing certain lands to all or particular kinds of livestock grazing or by removing unauthorized livestock; to require that public lands inhabited by wild horses and burros be closed to grazing by domestic horses and burros; and to allow private landowners to maintain wild horses and burros on their land, so long as the animals are not enticed or removed to such land and are not detained there.

Subpart 4720 of the proposed rulemaking states the circumstances under which straying or excess wild horses and burros are to be removed from public and private lands, and the procedures for removing them.

The proposed regulations are reorganized and consolidated by subject matter. Although four new subparts—Destruction of Wild Horses and Burros, and Disposal of Carcasses (Subpart 4730), Motor Vehicles and Aircraft (Subpart 4740), Private Maintenance (Subpart 4750), and Compliance (Subpart 4760)—have been added.

consolidation of the regulations and the elimination of unnecessary, unauthorized and obsolete provisions have reduced the length and complexity of the regulations. The new subparts incorporate the existing rules to the extent that they remain applicable, and add language where necessary to clarify requirements. For example, in Subpart 4740, explicit standards for vehicles are set forth to ensure the safe transport of wild horses and burros both by BLM personnel and by members of the public obtaining the animals for private maintenance.

New Subpart 4750 expands the existing regulations to incorporate all the requirements for private maintenance and adoption of wild horses and burros, including the requirement for adoption fees, qualification standards, conditions for the care and treatment of animals being maintained privately, and the replacement, under certain conditions, of animals that die during private maintenance.

Proposed Subpart 4730 consolidates the existing regulations on destruction of certain wild horses and burros and makes clear the limitations on methods of destruction. Section 4730.2, Disposal of Carcasses, is designed to avoid conflicts between Federal practices and State or local sanitation laws. The provision prohibiting receipt of compensation by a person disposing of a carcass is not intended to prohibit the sale of horse products by rendering plants, but rather only to prohibit the sale of animals to such plants and to discourage their slaughter for consumptive use.

The proposed regulations are written to alleviate regulatory burdens on persons who privately maintain wild horses and burros. The existing regulations, at § 4740.4–2(f), require the adopter to obtain a written statement from a veterinarian within 7 days of the death of an adopted animal. The proposed rulemaking would require only that the adopter notify the authorized officer within 7 days of the discovery of the death, escape or theft of an animal. The authorized officer then has discretion to investigate the circumstances of death and is required to investigate escape or theft. This modified provision will be less costly to the adopter and will encourage the adopter to report problems promptly. By starting the notification period on the date of discovery, the proposed rulemaking adds flexibility to cover cases where the problem is not discovered within 7 days of its occurrence, for whatever reason.

Section 4740.5(a) of the existing regulations limits the transfer of title to four animals per year per applicant. Section 4750.5(a) of the proposed rulemaking allows adopters credit for humane treatment of animals during the years before title was first offered in 1980. By accumulating credit for care at the rate of four horses or burros per year, an adopter can obtain title to more than four animals in the current year based on proper care of animals maintained privately during the 1970's. The limit is four animals for each year of such care.

Section 4740.5(b) of the proposed rulemaking modifies the requirement in § 4740.5(b) of the existing regulations for a veterinarian's certification that privately maintained horses and burros are receiving proper care and treatment. It allows such certification to be made by any qualified person, such as a cooperative extension agent, humane officer or the authorized officer of the Bureau of Land Management. Such officials are equally capable of providing the necessary certificate, and may be more familiar with the individual animal. The new process may be more convenient and less expensive for the adopter.

The proposed rulemaking deletes certain requirements not supported by law. References to "problem animals," a requirement that slaughterhouses retain title for 1 year after slaughtering, a prohibition of accepting an animal for slaughter without a Certificate of Title, and a provision that a private landowner may request that the BLM remove wild horses and burros only from fenced land, have all been eliminated. There is no reference in the law to "problem animals"; there is no legal justification for Federal control of animals once title passes; and a Federal District Court in Oregon has ruled that the requirement that animals shall be removed by the Federal Government only from fenced private land is unsupported by law, and that slaughterhouses need not obtain a Certificate of Title.

The principal author of this proposed rulemaking is John S. Boyles, Division of Wild Horses and Burros, assisted by the staff of the Office of Legislation and Regulatory Management, Bureau of Land Management.

It is hereby determined that this rulemaking does not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement pursuant to section 102(2)(C) of the National

Environmental Policy Act of 1969 (42 U.S.C. 4332(2)(C)) is required. The Department of the Interior has determined that this document is not a major rule under Executive Order 12291 and that it will not have a significant economic effect on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 et seq.). A limited number of veterinarians, cooperative extension agents and human officials may be insignificantly affected by the rulemaking. The certification required for adopters to receive title is needed on a nonrecurring basis. The changes allow adopters flexibility in choosing the official from whom they obtain a certification, resulting in some cost-savings. Adopters are required to pay a fee to obtain the animals and to provide information to show their ability to provide humane transport, facilities and care for the animals. An insignificant number of individuals may be deterred from participating by the fee or qualification standards for humane care.

Information collection requirements for Applications for Adoption of Wild Horse(s) or Burro(s) and for Applications for Title to Wild Horse(s) and Burro(s) have been approved by the Office of Management and Budget and assigned clearance numbers 1004–0042 and 1004–0046, respectively. Additional information collection requirements contained in this proposed rulemaking, relating to requests for removal of strayed animals from private land (§ 4720.2–1), and applications for private maintenance of 4 or more wild horses or burros (§ 4750.3–3), have been submitted to the Office of Management and Budget for review.

### List of Subjects in 43 CFR Part 4700

Advisory committees, Aircraft, Intergovernmental relations, Penalties, Public lands, Range management, Wild horses and burros, Wildlife.

Under the provisions of the Act of September 8, 1959 (18 U.S.C. 47), the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340), the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1701 et seq.) and the Act of June 28, 1934, as amended (43 U.S.C. 315), it is proposed to amend Part 4700, Subchapter D, Chapter II, Title 43 of the Code of Federal Regulations as set forth below:

### GROUP 4700—WILD FREE-ROAMING HORSE AND BURRO MANAGEMENT

### PART 4700—PROTECTION, MANAGEMENT, AND CONTROL OF WILD FREE-ROAMING HORSES AND BURROS

**Subpart 4700— General**

Sec.
4700.0–1 Purpose.
4700.0–2 Objectives.
4700.0–3 Authority.
4700.0–5 Definitions.
4700.0–6 Policy.

**Subpart 4710—Management Considerations**

4710.1 Land use planning.
4710.2 Inventory and monitoring.
4710.3 Management areas.
4710.3–1 Herd management areas.
4710.3–2 Wild horse and burro ranges.
4710.4 Constraints on management.
4710.5 Closure to livestock grazing.
4710.6 Removal of unauthorized livestock in or near areas occupied by wild horses or burros.
4710.7 Maintenance of wild horses and burros on unfenced privately controlled lands.

**Subpart 4720—Removal**

4720.1 Removal of excess animals from public lands.
4720.2 Removal of strayed or excess animals from private lands.
4720.2–1 Removal of strayed animals from private lands.
4720.2–2 Removal of excess animals from private lands.

**Subpart 4730—Destruction of Wild Horses or Burros and Disposal of Carcasses**

4730.1 Destruction.
4730.2 Disposal of carcasses.

**Subpart 4740—Motor Vehicle and Aircraft**

4740.1 Use of motor vehicles or aircraft.
4740.2 Standards for vehicles used for transport of wild horses and burros.

**Subpart 4750—Private Maintenance**

4750.1 Private maintenance.
4750.2 Health, identification, and inspection requirements.
4750.2–1 Health and identification requirements.
4750.2–2 Brand inspection.
4750.3 Application requirements for private maintenance.
4750.3–1 Application for private maintenance of wild horses and burros.
4750.3–2 Qualification standards for private maintenance.
4750.3–3 Supporting information and certification for private maintenance of more than 4 wild horses or burros.
4750.3–4 Approval or disapproval of applications.
4750.4 Private maintenance of wild horses and burros.

Sec.
4750.4–1   Private maintenance and care
    agreement.
4750.4–2   Adoption fee.
4750.4–3   Request to terminate private
    maintenance and care agreement.
4750.4–4   Replacement animals.
4750.5   Application for title to wild horses
    and burros.

**Subpart 4760—Compliance**

4760.1   Compliance with the Private
    Maintenance and Care Agreement.

**Subpart 4770—Prohibited Acts,
Administrative Remedies, and Penalties**

4770.1   Prohibited acts.
4770.2   Civil penalties.
4770.3   Administrative remedies.
4770.4   Arrest.
4770.5   Criminal penalties.

    **Authority:** Act of Dec. 15, 1971, as amended
(16 U.S.C. 1331–1340), Act of Oct. 21, 1976 (43
U.S.C. 1701 et seq.), Act of Sept. 8, 1959 (18
U.S.C. 47), Act of June 28, 1934 (43 U.S.C. 315).

**§ 4700.0–1   Purpose.**

    The purpose of these regulations is to
implement the laws relating to the
protection, management, and control of
wild horses and burros under the
administration of the Bureau of Land
Management.

**§ 4700.0–2   Objectives.**

    The objectives of these regulations are
management of wild horses and burros
as recognized components of the public
lands under the principle of multiple
use; protection of wild horses and
burros from unauthorized capture,
branding, harassment or death; and
humane care and treatment of wild
horses and burros.

**§ 4700.0–3   Authority.**

    The Act of September 8, 1959 (18
U.S.C. 47); the Act of December 15, 1971,
as amended (16 U.S.C. 1331–1340); the
Federal Land Policy and Management
Act of 1976 (43 U.S.C. 1711, 1712, and
1734); the Act of June 28, 1934, as
amended (43 U.S.C. 315); and the
National Environmental Policy Act of
1969 (42 U.S.C. 4321, 4331–4335, and
4341–4347).

**§ 4700.0–5   Definitions.**

    As used in this part, the term:
    (a) "Act" means the Act of December
15, 1971, as amended (16 U.S.C. 1331–
1340), commonly referred to as the Wild
Free-Roaming Horse and Burro Act.
    (b) "Appropriate management level"
means the median number of wild
horses or burros 2 years old or older to
be maintained on a herd management
area
    (c) "Authorized officer" means any
employee of the Bureau of Land
Management to whom has been
delegated the authority to perform the
duties described herein.
    (d) "Band" means either a group of

wild horses or burros running together,
or a lone wild horse or burro.
    (e) "Commercial exploitation" means
using a wild horse or burro because of
its characteristics of wildness for direct
or indirect financial gain.
Characteristics of wildness include the
rebellious and feisty nature of such
animals and their defiance of man as
exhibited in their undomesticated and
untamed state. Use as saddle or pack
stock and other uses that require
domestication of the animal are not
commercial exploitation of the animals
because of their characteristics of
wildness.
    (f) "Excess wild horses or burros"
means wild horses or burros (1) which
have been removed from an area by the
unauthorized officer pursuant to
applicable law, or (2) which must be ·
removed from an area in order to attain
the appropriate management level.
    (g) "Herd" means one or more bands
using the same general area.
    (h) "Humane treatment" means kind
and merciful handling compatible with
standard animal husbandry practices,
without causing unnecessary stress or
suffering to a wild horse or burro.
    (i) "Inhumane treatment" means any
intentional action or failure to act that
causes stress, injury, or death to a wild
horse or burro and is not compatible
with standard animal husbandry
practices.
    (j) "Lame wild horse or burro" means
a wild horse or burro with
malfunctioning limbs that permanently
impair its freedom of movement.
    (k) "Old wild horse or burro" means a
wild horse or burro characterized
because of age by its physical
deterioration, inability to fend for itself,
suffering, or closeness to death.
    (l) "Private maintenance" means the
provision of proper care and humane
treatment to excess wild horses and
burros by qualified individuals under
the terms and conditions specified in a
Private Maintenance and Care
Agreement.
    (m) "Public lands" means any lands or
interests in lands administered by the
Secretary of the Interior through the
Bureau of Land Management.
    (n) "Sick wild horse or burro" means a
wild horse or burro with failing health,
infirmity or disease from which there is
little chance of recovery.
    (o) "Wild horses and burros" means
all unbranded and unclaimed horses
and burros that use public lands as all
or part of their habitat, or that have
been removed from these lands by the
authorized officer but have not lost their
status under section 3 of the Act.

**§ 4700.0–6   Policy.**

    (a) Wild horses and burros and their

habitat shall be managed to maintain
vigorous populations of healthy animals
in balance with the productive capacity
of the public lands.
    (b) Wild horses and burros shall be
considered comparably with other
resource values in the formulation of
land use plans.
    (c) Management activities affecting
wild horses and burros shall be
undertaken with the goal of maintaining
free-roaming behavior.
    (d) In administering these regulations,
the authorized officer shall consult with
Federal and State wildlife agencies and
all other affected interests, to involve
them in planning for and management of
wild horses and burros on the public
lands.
    (e) Healthy excess wild horses and
burros for which an adoption demand
by qualified individuals exists shall be
made available at adoption centers
nationwide for private maintenance and
care.
    (f) Fees shall be required from
qualified individuals adopting excess
wild horses and burros to defray part of
the costs of the adoption program.

**Subpart 4710—Management
Considerations**

**§ 4710.1   Land use planning.**

    Management activities affecting wild
horses and burros, including the
establishment of herd management
areas, shall be compatible with
approved land use plans prepared
pursuant to Part 1600 of this title.

**§ 4710.2   Inventory and monitoring.**

    The authorized officer shall maintain
a record of the herd areas that existed in
1971, and a current inventory of the
numbers of animals and their areas of
use. When management areas are
established, the authorized officer shall
also inventory and monitor herd and
habitat characteristics, including, but
not limited to, habitat condition and
trend, the age, sex and social structure
of bands and herds, and the condition
and physical characteristics of the
animals.

**§ 4710.3   Management areas.**

**§ 4710.3–1   Herd management areas.**

    The authorized officer shall establish
herd management areas for the
maintenance and management of wild
horse and burro herds. In delineating
each herd management area, the
authorized officer shall consider the
appropriate management level for the
herd, the habitat requirements of the
animals, and the relationships with
other uses of the public lands. The
authorized officer shall prepare a herd

management area plan, which may cover one or more herd management areas.

### § 4710.3–2   Wild horse and burro ranges.

Herd management areas may also be designated by the authorized officer as wild horse or burro ranges to be managed principally, but not necessarily exclusively, for wild horse or burro herds.

### § 4710.4   Constraints on management.

Management of wild horses and burros shall be confined to areas used by herds as yearlong habitat in 1971. Management of wild horses and burros shall be at the minimum level necessary to obtain the objectives identified in approved land use plans and herd management area plans.

### § 4710.5   Closure to livestock grazing.

(a) If necessary to provide habitat for wild horses or burros, to implement herd management actions, or to protect wild horses or burros from disease, harassment or injury, the authorized officer may close appropriate areas of the public lands to grazing use by all or a particular kind of livestock.

(b) All public lands inhabited by wild horses or burros shall be closed to grazing by domestic horses and burros.

(c) Notices of closure and decisions requiring modification of authorized grazing use shall be issued as final decisions in full force and effect on the date specified in the notice or decision, regardless of appeal.

### § 4710.6   Removal of unauthorized livestock in or near areas occupied by wild horses or burros.

The authorized officer may establish conditions for the removal of unauthorized livestock in areas adjacent to or within areas occupied by wild horses or burros to prevent undue harassment of the wild horses or burros. Liability and compensation for damages from unauthorized use shall be determined in accordance with subpart 4150 of this title.

### § 4710.7   Maintenance of wild horses and burros on unfenced privately controlled lands.

Individuals controlling unfenced lands within areas occupied by wild horses and burros may allow wild horses or burros to use these lands. Individuals who maintain wild free-roaming horses and burros on their lands shall notify the authorized officer and shall supply a reasonable estimate of the number of such animals so maintained. Individuals shall not remove or entice wild horses or burros from the public lands or detain them on private lands.

### Subpart 4720—Removal

### § 4720.1   Removal of excess animals from public lands.

Upon examination of current information and a determination by the authorized officer that an excess of wild horses or burros exists, the authorized officer shall remove the excess animals immediately in the following order:

(a) Old, sick, or lame animals shall be destroyed in accordance with Subpart 4730 of this title;

(b) Additional excess animals for which an adoption demand by qualified individuals exists shall be captured and made available for private maintenance in accordance with Subpart 4750 of this title; and

(c) Remaining excess animals for which no adoption demand by qualified individuals exists shall be destroyed in accordance with Subpart 4730 of this title.

### § 4720.2   Removal of strayed or excess animals from private lands.

### § 4720.2–1   Removal of strayed animals from private lands.

Upon written request from the private landowner to any representative of the Bureau of Land Management, the authorized officer shall remove stray wild horses and burros from private lands as soon as practicable. The private landowner may also submit the written request to a Federal marshal, who shall notify the authorized officer. The request should indicate the numbers of wild horses or burros, the date(s) the animals were on the land, legal description of the private land, and any special conditions that should be considered in the gathering plan.

### § 4720.2–2   Removal of excess animals from private lands.

If the authorized officer determines that proper management requires the removal of wild horses and burros from private lands, the authorized officer shall obtain the written consent of the private owner before entering or using such lands.

### Subpart 4730—Destruction of Wild Horses or Burros and Disposal of Carcasses

### § 4730.1   Destruction.

Except as an act of mercy, no wild horse or burro shall be destroyed without the authorization of the authorized officer. Wild horses and burros shall be destroyed in the most humane and cost efficient manner possible.

### § 4730.2   Disposal of carcasses.

Carcasses of wild horses or burros shall be disposed of in accordance with State or local sanitation laws. No compensation of any kind shall be received by any agency or individual disposing of a carcass.

### Subpart 4740—Motor Vehicles and Aircraft

### § 4740.1   Use of motor vehicles or aircraft.

(a) Motor vehicles and aircraft may be used by the authorized officer in all phases of the administration of the Act, except that no motor vehicle or aircraft, other than helicopters, shall be used for the purpose of herding or chasing wild horses or burros for capture or destruction.

(b) Before using helicopters in the capture of wild horses or burros or motor vehicles for their transport to adoption processing facilities, the authorized officer shall conduct a public hearing in the State where wild horses or burros are to be gathered.

### § 4740.2   Standards for vehicles used for transport of wild horses and burros.

(a) Use of motor vehicles for transport of wild horses or burros shall be in accordance with appropriate local, State and Federal laws and regulations applicable to the humane transportation of horses and burros, and shall include, but not be limited to, the following standards:

(1) The interior of enclosures shall be free from protrusions that could injure animals;

(2) Equipment shall be in safe conditions and of sufficient strength to withstand the rigors of transportation.

(3) Enclosures shall have ample head room to allow animals to stand normally;

(4) Enclosures for transporting two or more animals shall have partitions to separate them by age and sex as deemed necessary by the authorized officer;

(5) Floors of enclosures shall be covered with nonskid material;

(6) Enclosures shall be adequately ventilated and offer sufficient protection to animals from inclement weather and temperature extremes; and

(7) Unless otherwise approved by the authorized officer, transportation shall be limited in sequence to a maximum of 24 hours followed by a minimum of 5 hours of on-the-ground rest with adequate feed and water.

(b) The authorized officer shall not load wild horses or burros if he/she determines that the vehicle to be used for transporting the wild horses or

burros is not satisfactory for that purpose.

## Subpart 4750—Private Maintenance

### § 4750.1   Private maintenance.

The authorized officer shall make available for private maintenance all healthy excess wild horses or burros for which an adoption demand by qualified individuals exists.

### § 4750.2   Health, identification, and inspection requirements.

### § 4750.2–1   Health and identification requirements.

(a) An individual determined to be qualified by the authorized officer shall verify each excess animal's soundness and good health, determine its age and sex, and administer tests for communicable diseases, immunizations and worming compounds.

(b) Documentation conforming compliance with State health inspection and immunization requirements for each wild horse or burro shall be provided to each adopter by the authorized officer.

(c) Each animal offered for private maintenance, including orphan and unweaned foals, shall be individually identified by the authorized officer with a permanent freeze mark of alpha numeric symbols on the left side of its neck. The freeze mark identifies the animal as Federal property subject to the provisions of the Act and these regulations by a patented symbol, the animal's year of birth, and its individual identification number. The authorized officer shall record the freeze mark on the documentation of health and immunizations. For purposes of this subpart, a freeze mark applied by the authorized officer is not considered a brand.

### § 4750.2–2   Brand inspection.

The authorized officer shall make arrangements on behalf of an adopter for State inspection of brands, where applicable, for each animal to be transported across the State where the adoption center is located only. The adopter shall be responsible for obtaining inspections for brands required by other States to or through which the animal may be transported.

### § 4750.3   Application requirements for private maintenance.

### § 4750.3–1   Application for private maintenance of wild horses and burros.

An individual applying for a wild horse or burro shall file an application with the Bureau of Land Management on a form aproved by the Director. The application shall be accompanied by a nonrefundable garanteed remittance of

$25 (cashier's check, money order, bank draft, or any other form of remittance other than personal, company or payroll checks). If the application is approved by the authorized officer, the remittance shall be applied against the adoption fee required by § 4750.4–2 of this subpart.

### § 4750.3–2   Qualification standards for private maintenance.

(a) To qualify to receive a wild horse or burro for private maintenance, an individual shall:

(1) Be of legal age for entering contracts as determined by the law of the State or United States trust territory where the individual is a resident;

(2) Have no prior conviction for inhumane treatment of animals or for violation of the Act or these regulations;

(3) Have adequate feed, water, shelter, space, and transport equipment to provide humane care and treatment to the number of animals requested; and

(4) Have obtained no more than 4 wild horses and burros within the preceding 12-month period, unless specifically authorized in writing by the authorized officer.

(b) The authorized officer shall determine an individual's qualifications based upon information provided in the application form required by § 4750.3–1 of this subpart and Bureau of Land Management records of any previous private maintenance by the individual under the Act.

### § 4750.3–3   Supporting information and certification for private maintenance of more than 4 wild horses or burros.

(a) An individual applying for more than 4 wild horses or burros within a 12-month period, or an individual or group of individuals requesting to maintain more than 4 wild horses or burros at a single location, shall provide written certification that the applicant's facilities and capabilities appear adequate to maintain and care for the number of animals requested. This certification shall be obtained from a veterinarian, local humane official, cooperative extension agent or similarly qualified person approved by the authorized officer.

(1) The certification shall assert that the facilities satisfy Bureau of Land Management requirements, shall contain a description of the facilities, including corral size, pasture size and shelter, barn or stall dimensions, and shall note discrepancies between the facilities inspected and representations made in the application form.

(2) When an applicant requests 25 or more animals or when more than 24 animals will be maintained at any single location regardless of the number of

applicants, the facilities for maintaining the adopted animals shall be inspected by the authorized officer.

(b) Any individual or group requesting to maintain more than 4 wild horses or burros at a single location shall also provide the following information:

(1) A summary of the age, sex, and number of wild free-roaming horses and burrow requested by species;

(2) Requested adoption date and center location;

(3) If applicable, names, addresses and telephone numbers of all applicants represented by any power of attorney submitted with the request;

(4) A transportation plan that describes the transport vehicle and any rest-stops;

(5) A distribution plan for delivering the animals to their assigned adopters;

(6) Names, addresses, and a concise background of the experience of the individuals who will handle the adopted animals during transportation and distribution; and

(7) When the adopted animals will be maintained at a single location or where the applicants have been solicited by the holder of their power of attorney, a concise statement outlining the arrangements, including duties and responsibilities of the parties, for maintaining the animals.

### § 4750.3–4   Approval or disapproval of applications.

If an application is approved, the authorized officer shall offer the individual an opportunity to select the appropriate number, sex, age and species of animals from those available. If the authorized officer disapproves an application for private maintenance because the applicant lacks adequate facilities or transport, the individual may correct the shortcoming and file a new application.

### § 4750.4   Private maintenance of wild horses and burros.

### § 4750.4–1   Private Maintenance and Care Agreement.

To obtain a wild horse or burro, a qualified applicant shall execute a Private Maintenance and Care Agreement and agree to abide by its terms and conditions, including but not limited to the following:

(a) Title to wild horses and burros covered by the agreement shall remain in the Federal Government for at least 1 year after the Private Maintenance and Care Agreement is executed and until a Cerificate of Title is issued by the authorized officer;

(b) Wild horses and burros covered by the agreement shall not be destroyed,

except as an act of mercy, without the prior approval of the authorized officer;

(c) Wild horses and burros covered by the agreement shall not be sold or otherwise exploited commercially, neglected, abandoned, inhumanely treated, branded or otherwise marked permanently, or used for bucking stock;

(d) Freeze marks identifying wild horses and burros covered by the agreement shall not be altered or destroyed;

(e) Wild horses and burros covered by the agreement shall not be transferred permanently to another location or to the care of another individual without the prior approval of the authorized officer;

(f) Wild horses and burros covered by the agreement shall be made available for physical inspection upon written request by the authorized officer;

(g) The authorized officer shall be notified within 7 days of discovery of the death, theft or escape of wild horses and burros covered by the agreement; and

(h) Maintaining and properly caring for wild horses and burros covered by the agreement shall be the responsibility of the adopter.

### § 4750.4–2  Adoption fee.

(a) An individual obtaining wild horses and burros shall pay the Bureau of Land Management an adoption fee of $125 per horse and $75 per burro, except that no fee shall be paid for an orphan foal under the age of 6 months or an unweaned foal under the age of 6 months accompanying its mother. The authorized officer shall credit the advance payment required by § 4750.3–1 of this subpart to the total adoption fee and collect the remaining adoption fee from the individual when the Private Maintenance and Care Agreement is executed.

(b) The Director may adjust or waive the adoption fee on determining that wild horses or burros in the custody of the Bureau of Land Management are unadoptable when the full adoption fee is required, and that it is in the public interest to adjust or waive the adoption fee stated in paragraph (a) of this section. The adjustment or waiver shall extend only to those persons who are willing to maintain such animals privately, who demonstrate the ability to care for them properly, and who agree to comply with all rules and regulations relating to wild horses and burros.

### § 4750.4–3  Request to terminate Private Maintenance and Care Agreement.

An adopter may request to terminate his/her responsibility for an animal by submitting a written relinquishment of

the Private Maintenance and Care Agreement for that animal. The authorized officer shall take possession of the animal upon receipt of the written relinquishment.

### § 4750.4–4  Replacement animals.

The authorized officer shall replace an animal, upon request by the adopter, if (a) within 60 days of the execution of the Private Maintenance and Care Agreement the animal dies or is required to be destroyed due to a condition that existed at the time of placement with the adopter; and (b) the adopter provides, within a reasonable time, a statement by a veterinarian certifying that reasonable care and treatment would not have corrected the condition. Transportation costs of the replacement animal shall be paid by the adopter.

### § 4750.5  Application for title to wild horses and burros.

(a) An adopter who has abided by the terms and conditions of the Private Maintenance and Care Agreement for 12 months may apply for title to the wild horse(s) and burro(s) covered by the agreement. A qualified adopter may be granted title to no more than 4 animals per 12-month period of proper private maintenance. This credit may be accumulated from year to year if not used.

(b) An adopter applying for title shall file an application with the Bureau of Land Management. The adopter shall submit with the application a statement from a veterinarian, cooperative extension agent, local humane official, or similarly qualified individual approved by the authorized officer certifying that he/she has inspected the animal for which title is requested and that the animal is receiving proper care and treatment. The adopter shall certify that he/she has provided care and treatment in accordance with the Private Maintenance and Care Agreement.

(c) If the application for title is approved, the authorized officer shall issue a Certificate of Title for each animal. Effective the date of issuance of the Certificate of Title, Federal ownership of the wild horse or burro ceases and the animal loses its status as a wild horse or burro and is no longer under the protection of the Act or regulations under this title.

## Subpart 4760—Compliance

### § 4760.1  Compliance with the Private Maintenance and Care Agreement.

(a) An adopter shall comply with the terms and conditions of the Private Maintenance and Care Agreement and these regulations. The authorized officer may verify compliance by visits to an

adopter, physical inspections of the animals, and inspections of the facilities and conditions in which the animals are being maintained. The authorized officer may authorize a cooperative extension agent, local humane official or similarly qualified individual to verify compliance.

(b) The authorized officer shall conduct an investigation when a complaint concerning the care, treatment, or use of a wild horse or burro is received by the Bureau of Land Management.

(c) The authorized officer may require, as a condition for continuation of a Private Maintenance and Care Agreement, that an adopter take specific corrective actions if the authorized officer determines that an animal is not receiving proper care of is being maintained in unsatisfactory conditions. The adopter shall be given reasonable time to complete the required corrective actions.

## Subpart 4770—Prohibited Acts, Administrative Remedies, and Penalties

### § 4770.1  Prohibited acts.

The following acts are prohibited:

(a) Maliciously injuring or harassing a wild horse or burro;

(b) Removing or attempting or remove a wild horse or burro from the public lands without authorization from the authorized officer;

(c) Destroying a wild horse or burro without authorization from the authorized officer except as an act of mercy;

(d) Selling or attemping to sell, directly or indirectly, a wild horse or burro;

(e) Commercially exploiting a wild horse or burro;

(f) Treating a wild horse or burro inhumanely;

(g) Using a wild horse or burro for bucking stock;

(h) Violating a term or condition of the Private Maintenance and Care Agreement;

(i) Applying a brand;

(j) Removing or altering a freeze mark.

### § 4770.2  Civil penalties.

(a) A grazing permittee or lessee who has been convicted or otherwise found in violation of any of these regulations may be subject to suspension or cancellation of the grazing permit or lease and of the grazing preference, as provide in § 4170.1–1 of this title.

(b) An adopter's failure to comply with the terms and conditions of the Private Maintenance and Care

Agreement may result in the cancellation of the agreement, repossession of wild horses and burros included in the agreement, and disapproval of requests by the adopter for additional excess wild horses and burros.

### § 4770.3  Administrative remedies.

Any person who is adversely affected by a decision of the authorized officer in the administration of these regulations may file an appeal in accordance with 43 CFR 4.4 within 30 days of receipt of the written decision.

### § 4770.4  Arrest.

The Director of the Bureau of Land Management may authorize an employee who witnesses a violation of the Act or these regulations to arrest without warrant any person committing the violation, and to take the person immediately for examination or trial before an officer or court of competent jurisdiction. Any employee so authorized shall have power to execute any warrant or other process issued by an officer or court of competent jurisdiction to enforce the provisons of the Act of these regulations.

### § 4770.5  Criminal penalties.

Any person who commits any act prohibited in section 4770.1 of these regulations shall be subject to a fine of not more than $2,000 or imprisonment for not more than 1 year, or both, for each violation. Any person so charged with such violation by the authorized officer may be tried and sentenced by a United States Commissioner or magistrate, designated for that purpose by the court by which he/she was appointed, in the same manner and subject to the same conditions as provided in 18 U.S.C. 3401.

**Garrey E. Carruthers,**

*Assistant Secretary of the Interior.*

August 15, 1984.

[FR Doc. 32834 Filed 12–17–84; 8:45 am]

**BILLING CODE 4310-84-M**