TODD KIM, Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
MICHELLE M. SPATZ, Trial Attorney
FRANCES B. MORRIS, Trial Attorney
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 598-9741 (Spatz)
(202) 514-2855 (Morris)
michelle.spatz@usdoj.gov
frances.morris@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CANA FOUNDATION, a non-profit corporation, LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management, <br><br> *Federal Defendants*. | Case No. 2:22-cv-01200-CDS-BNW <br><br> **FEDERAL DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Per the Court's Order entered on May 17, 2024, ECF No. 72, Federal Defendants submit this supplemental response "addressing whether issue preclusion bars any questions, issues, or facts decided in the Court's order in *Leigh et al. v. Raby et al.*, __ F. Supp. 3d __, No. 3:22-cv-00034-MMD-CLB, 2024 WL 1345297 (D. Nev. Mar. 28, 2024) [("*Leigh I*").]" ECF No. 72 (citing *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), as amended (May 3, 2012)).

I.   **Issue Preclusion Standard**

Under *Oyeniran*, the doctrine of collateral estoppel (or issue preclusion) applies to "a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." 672 F.3d at 806.

II.  **Plaintiffs are collaterally estopped from relitigating the legal question of whether the Bureau of Land Management ("BLM") is required to complete a Herd Management Area Plan ("HMAP") as a prerequisite to conducting a gather under the Wild Free-Roaming Horses and Burros Act ("Wild Horse Act")**.

With respect to the first *Oyeniran* factor, while the two cases involve different factual nucleuses because they challenge different gathers conducted under different gather plans, both cases present the identical legal question of whether the Wild Horse Act and its implementing regulations require BLM to prepare an HMAP prior to conducting a gather. *Compare* Pls.' Mot. for Summ. J. in *Leigh I*, ECF No. 65-1 at 15-22 (arguing that "The [Wild Horse Act] and Its Implementing Regulations Establish a Mandatory, Non-Discretionary Duty to Prepare an HMAP Prior to Engaging in Management Activities Such as Plans Providing for the Gather and Removal of Wild Horses"), *with* Pls.' Mot. for Summ. J. in this case, ECF No. 50 at 22-28 (arguing that the "[Wild Horse Act] and its implementing regulations establish mandatory duties with which BLM must comply[,]" including that "BLM must prepare . . . HMAPs prior to engaging in management activities, such as the removal of horses and burros").

With respect to the second *Oyeniran* factor, the question of whether completion of an HMAP is a mandatory prerequisite to conducting a gather was clearly litigated and decided in *Leigh I*. Indeed, the Court in *Leigh I* held that "BLM may conduct management activities on [Herd Management Areas ("HMAs")] which do not yet have an approved HMAP." *Leigh I*, 2024 WL

1

1345297, at *3. The Court rejected Plaintiffs' interpretation of the Wild Horse Act and its implementing regulations (which Plaintiffs continue to assert in this case), because "[r]eading the regulations as Plaintiffs request would force BLM to put gathers on hold for months, years, or perhaps even decades until an HMAP is approved, instead of conducting immediate removals[,]" which would run counter to the intent of the Wild Horse Act. *Id.*

With respect to the third factor, there is no question that there was a full and fair opportunity to litigate this issue in *Leigh I*. Plaintiffs presented their argument that BLM is required to complete an HMAP prior to herd management activities in their motion for a preliminary injunction filed on January 24, 2022, *Leigh I* at ECF No. 6, in their motion for summary judgment filed on August 10, 2023, *id.* at ECF No. 64, in their reply in support of their summary judgment motion filed on November 14, 2023, *id.* at ECF No. 71, and oral argument was held on March 19, 2024, *see id.* at ECF No. 80. Federal Defendants opposed Plaintiffs' position in each of their responsive briefs. *See id.* at ECF Nos. 19, 70, 73.

The fourth *Oyeniran* factor is also met because the question of whether BLM must prepare an HMAP prior to conducting a gather was necessary to the merits of several of Plaintiffs' claims. With respect to Plaintiffs' claim that BLM unlawfully withheld HMAPs for the Pancake Complex, the Court's analysis "turn[ed] on whether the deadline for preparing an HMAP is firm or discretionary" and it found that, because there are no "firm deadlines for developing an HMAP, the Pancake Complex HMAPs have not been unlawfully withheld." *Leigh I*, 2024 WL 1345297, at *3-4. The Court also rejected Plaintiffs' claim that BLM's actions were "arbitrary and capricious" based on its finding that "BLM may gather excess horses without first preparing and approving an HMAP." *Id.* at *7. Similarly, the Court rejected Plaintiffs' claim that BLM "act[ed] in excess of [its] statutory jurisdiction, authority, or limitations by gathering horses before preparing an HMAP" based on its finding that "conducting a gather for an area which did not yet have an HMAP was within BLM's authority." *Id.* at *8.

Thus, the doctrine of issue preclusion clearly bars Plaintiffs from relitigating the legal question of whether BLM is required to prepare an HMAP before conducting a gather.

**III.   Issue preclusion does not apply to the question of unreasonable delay.**

In Federal Defendants' reply in support of their cross-motion for summary judgment, they

2

did "not dispute [Plaintiffs' argument] that issue preclusion applies with respect to the Court's finding of unreasonable delay in *Leigh I*[.]" Fed. Defs.' Reply at 6-7, ECF No. 71. However, upon further review and analysis of the Ninth Circuit's *Oyeniran* decision cited in the Court's May 17, 2024, Order, ECF No. 72, while Federal Defendants continue to believe that the Court's unreasonable delay finding in *Leigh I* is relevant to the question of unreasonable delay in this case, the first *Oyeniran* factor indicates that issue preclusion does not apply because a court's unreasonable delay analysis is a fact-specific inquiry that may vary with respect to the HMA in question.[1]

In *Leigh I*, the Court held that "BLM's delay in preparing HMAPs for the Pancake and Sand Springs West HMAs has been unreasonable." *Id.* at *7. The first *Oyeniran* factor is not met because the issue at stake in this case is not identical. Plaintiffs in *Leigh I* alleged that BLM had unreasonably delayed preparing HMAPs for the Pancake Complex HMAs, whereas, here, Plaintiffs allege that BLM has unreasonably delayed preparing HMAPs for the Blue Wing Complex HMAs. Although the differences between the two issues may not necessarily change the outcome of the Court's unreasonable delay analysis, the issues are clearly not "identical" as required by *Oyeniran*. For example, in *Leigh I*, the Court found BLM's "duty to prepare an HMAP arose as soon as BLM created the HMAs—or, if the HMAs predate Section 4710.3-1, that duty arose when BLM promulgated the regulation 38 years ago in 1986." *Leigh I*, 2024 WL 1345297, at *6. Noting that "BLM created the Pancake HMA in 2008 and the Sand Springs West HMA in the late 1980s[,]" the Court held that BLM's delay in developing an HMAP was unreasonable. *Id.* Here, the Blue Wing Complex HMAs were established beginning in the 1970s. *See* BW_00004.[2] Thus, while the question of unreasonable delay may be similar in each case,

---

[1] Regardless of whether issue preclusion applies, Plaintiffs' unreasonable delay claim has become prudentially moot for the reasons discussed in Federal Defendants' reply brief. *See* Fed. Defs.' Reply at 6-8 ("BLM has taken steps toward issuing an HMAP for the Blue Wing Complex within one year, rendering Plaintiffs' unreasonable delay claim prudentially moot.").

[2] *See also* BLM Blue Wing Complex Herd Management Areas Management Evaluation Report, https://eplanning.blm.gov/public_projects/2032468/200615113/20109585/251009579/Blue%20Wing%20Complex%20Management%20Evaluation%20Report_508.pdf ("The HMAs and HAs were established in 1971, but the BLM determined that it would manage them as a Complex in 1986.") (last visited May 31, 2024).

3

there are factual distinctions. The issues at stake are therefore not identical.

Moreover, practically speaking, if the Court were to find that issue preclusion applies to the question of unreasonable delay as it relates to different gathers conducted on different HMAs under different gather plans, such a ruling could have far-reaching and unjust results. As the Court recognized in *Leigh I*, to determine whether there has been unreasonable delay, courts in this Circuit "use[] the six-factor balancing test announced by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC* ("*TRAC*")." *Leigh I*, 2024 WL 1345297, at *6 (citation omitted). The six *TRAC* factors include: (1) whether the time for agency action has been reasonable; (2) whether Congress has supplied a timeframe for the action; (3) whether the delay affects human health and welfare; (4) whether compelling the agency to act would detract from its higher or competing priorities; (5) the nature and extent of the interests prejudiced by delay; and (6) whether agency impropriety is behind the delay. *TRAC*, 750 F.2d 70, 80 (D.C. Cir. 1984). While Federal Defendants are not arguing that an analysis of the *TRAC* factors would lead to meaningfully different outcomes for the Pancake Complex HMAs versus the Blue Wing Complex HMAs, a different result is certainly possible with respect to other HMAs for which Plaintiffs may allege BLM has unreasonably delayed preparing an HMAP. By way of example, the length of delay may be meaningfully different, other critical agency priorities may be impacted by compelling agency action at that time, and/or other parties' interests may be prejudiced by the alleged delay. Thus, it would be improper to apply issue preclusion to the question of unreasonable delay here.[3]

Dated: May 31, 2024

Respectfully Submitted,

---

[3] Plaintiffs do not argue that issue preclusion applies to BLM's environmental analysis under the National Environmental Policy Act ("NEPA") in this case. This makes sense, as the NEPA analysis at issue in *Leigh I* was separate and distinct from the NEPA analysis completed for the Blue Wing Complex. In other words, the issues are not identical and were not actually litigated, as is required for issue preclusion to apply. Nevertheless, some of the NEPA claims are similar, and the Court can follow the same reasoning it applied in *Leight I* to the specific facts of this case. *See Leigh I*, 2024 WL 1345297, at *12-13 (finding that reductions in livestock grazing and raising AML were not reasonable alternatives).

4

1  TODD KIM, Assistant Attorney General

2  */s/ Michelle M. Spatz*
3  MICHELLE M. SPATZ, Trial Attorney
   D.C. Bar No. 1044400
4  United States Department of Justice
   Environment & Natural Resources Division
5  Wildlife & Marine Resources Section
   P.O. Box 7611
6  Washington, D.C. 20044-7611
   (202) 598-9741
7  michelle.spatz@usdoj.gov

8
   */s/ Frances B. Morris*
9  FRANCES B. MORRIS, Trial Attorney
   D.C. Bar No. 1016833
10 United States Department of Justice
   Environment & Natural Resources Division
11 Natural Resources Section
   P.O. Box 7611
12 Washington, DC 20044-7611
   (202) 514-2855
13 frances.morris@usdoj.gov

5

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 31, 2024, I filed the foregoing Supplemental Response to Plaintiffs' Motion for Summary Judgment electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ *Michelle M. Spatz*
Michelle M. Spatz
U.S. Department of Justice