ADAM R.F. GUSTAFSON, Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
MICHELLE M. SPATZ, Trial Attorney
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 598-9741 (Spatz)
(202) 514-2855 (Morris)
michelle.spatz@usdoj.gov
frances.morris@usdoj.gov

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CANA FOUNDATION, a non-profit corporation, LAURA LEIGH, individually, and WILD HORSE EDUCATION, a nonprofit corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>*Federal Defendants.* | Case No. 2:22-cv-01200-MMD-BNW<br><br>**JOINT MOTION FOR ENTRY OF STIPULATED SETTLEMENT AGREEMENT ON PLAINTIFFS' SIXTH CAUSE OF ACTION AND CLAIM FOR ATTORNEYS' FEES AND COSTS** |

**JOINT MOTION**

Plaintiffs CANA Foundation, Laura Leigh, and Wild Horse Education, and Federal Defendants, the United States Department of the Interior, the Bureau of Land Management ("BLM"), and Jon Raby, in his official capacity as Nevada State Director of BLM (collectively, "Parties") have reached a Stipulated Settlement Agreement ("Agreement") to resolve Plaintiffs' Sixth Cause of Action and Plaintiffs' claims for attorneys' fees and costs. The Parties respectfully request that the Court sign the attached proposed order adopting and approving the Agreement.

**STIPULATED SETTLEMENT AGREEMENT**

WHEREAS, on September 2, 2022, Plaintiffs filed their First Amended Complaint in the above-captioned action, asserting six causes of action. *See* ECF No. 24.

WHEREAS, on May 31, 2024, the Parties completed briefing on their cross-motions for summary judgment on all of Plaintiffs' causes of action.

WHEREAS, on September 23, 2024, the Court entered an Order on summary judgment, ECF No. 79, resolving all causes of action, with the exception of Plaintiffs' Sixth Cause of Action (First Amendment claim), regarding which the Court found triable issues of fact and referred the claim to United States Magistrate Judge Brenda Weksler to conduct a settlement conference under Local Rule 16-5. *See* ECF No. 79.

WHEREAS, on December 9, 2024, the Parties participated in a settlement conference before Magistrate Judge Weksler. *See* ECF No. 89.

WHEREAS, since then, the Partis reached a settlement agreement to resolve the only remaining cause of action in this case (the Sixth Cause of Action) and to resolve Plaintiffs' claim for attorneys' fees and costs.

WHEREAS, it is the Parties' intent that this Agreement resolve all issues that were not resolved in the Court's summary judgment Order, ECF No. 79, thereby concluding this case.

WHEREAS, although the Parties do not concede any arguments or defenses regarding any of the causes of action in Plaintiffs' First Amended Complaint, the Parties, through their authorized representatives, believe that this Agreement is a just, fair, and adequate resolution of the outstanding issues in this litigation.

1. <u>Public Viewing for Gathers Conducted Under the Blue Wing Gather Plan</u>. For any future gather of wild horses and/or burros conducted under the October 2017 Blue Wing

Complex Gather Plan at issue in this case ("Gather Plan"), an observer may request permission to view the gather operations from their vehicle. The process for such requests will be as follows:

    a.    All requests to view the gather from a vehicle must be made to the BLM Incident Commander that is on site (or the BLM employee in charge of the gather operation).

    b.    The BLM Incident Commander (or BLM employee in charge of the gather operation) will consider whether the agency can grant the request and, if so, develop instructions that narrowly tailor any restrictions on vehicular viewing to serve BLM's overriding interests in public safety and in conducting an effective and efficient gather.

    c.    BLM will consider factors including, but not limited to:
- where observers can park their vehicles;
- how close any potential parking sites are to the gather operations;
- levels of viewing access presently available;
- safety concerns; and
- gather effectiveness and efficiency concerns.

    d.    BLM will communicate its determination to any observers in attendance at the gather, including any specific instructions necessary to facilitate vehicle viewing.

    e.    If BLM grants the vehicle viewing request, the requesting observer must either accept or decline the option at the time that BLM communicates it has been granted.

    f.    All observers must abide by BLM's determination and instructions.

    g.    All observers must remain in the same location, whether it is the original location or the requested alternate vehicle location throughout the duration of the gather

3

activities at that trap site. BLM may change the location at any time due to safety or gather effectiveness and efficiency concerns.

      h.      BLM will post this procedure on its public announcement(s) of any gather operations under the Gather Plan on the BLM website.

2.      <u>Public Viewing Access to Blue Wing Burros at Axtell Corrals</u>.

      a.      BLM has an existing contract with a private landowner ("Private Landowner"), under which the wild burros gathered from the Blue Wing Complex in July 2022 are held at the Private Landowner's off-range facility. BLM will make best efforts to work with the Private Landowner to find a safe way to offer an annual public tour of its burro facility.[1] While BLM cannot and does not make any guarantees about what contract terms the Private Landowner will accept, BLM will use best efforts to incorporate such a tour into any new contract between BLM and the Private Landowner. BLM will also use best efforts to obtain a contract term which provides that the annual tour will be offered in either July, August, or September.

      b.      Until such time that a new contract is negotiated, BLM will provide an annual public tour of the Private Landowner's burro facility using the public roads that surround the burro facility. This tour will be offered immediately after the annual public tour that is already provided of the Private Landowner's horse facility. BLM will

---

[1] The contract between BLM and the Private Landowner that was in place at the time this action was filed expired at the end of March 2025. However, since then, BLM and the Private Landowner have entered a bridge contract which extends the terms of the previous contract while a new one is being negotiated. The bridge contract will expire on March 31, 2026. BLM will conduct negotiations with the Private Landowner regarding any new contract during the period of the bridge contract.

publicize the option for such a tour in its public announcement(s) of any annual tour of the Private Landowner's horse facility on the BLM website.

3. <u>Public Access to Veterinary Reports for On-The-Gather Deaths of Horses and Burros Gathered Under the Gather Plan</u>. For any gather that is authorized under the Gather Plan, BLM will post on its public-facing website for that gather a redacted copy of any veterinary report that is prepared for any wild horse or burro that dies on the gather.[2] The decision about whether a veterinary report is prepared is within the sole discretion of the federal or contracted veterinarian.[3] BLM will make best efforts to post any such report on its website within 60 days after the report is received from the veterinarian, which may be days or weeks after the gather is complete. In order to protect privacy interests, BLM will redact any identifying information of the veterinarian and/or other staff involved in the report/procedure. This agreement is prospective only and will not apply retroactively to any gather that is complete.

4. <u>Dismissal With Prejudice of Plaintiffs' Sixth Cause of Action (First Amendment Claim)</u>. Upon approval of this Agreement by the Court, Plaintiffs' Sixth Cause of Action shall be dismissed with prejudice.

5. <u>Settlement of Plaintiffs' Claim for Attorneys' Fees and Costs</u>.

a. For purposes of settlement only and without conceding liability for attorneys' fees and costs, Federal Defendants agree to pay a total of $120,00 in full and complete satisfaction of Plaintiffs' claims for attorneys' fees and costs and any and all

---

[2] "On the gather" means during on-range activities (i.e., during trapping or while the wild horses and burros being held in on-range temporary holding corrals).

[3] A veterinary report is prepared only when a necropsy is necessary after an undetermined cause of death.

potential claims, demands, rights, and causes of action for all attorneys' fees, costs, and expenses incurred by Plaintiffs in this litigation.

      b.      Payment shall be accomplished by electronic funds transfer into an account maintained by Greenfire Law, PC. Within ten (10) days of entry of an order approving this Agreement, Plaintiffs will provide Federal Defendants with the necessary account information to effectuate this electronic payment, including: the payee's bank account name, bank account number, routing number, account type, financial institution's name, city, and state, and Plaintiffs' tax identification numbers.

      c.      Federal Defendants shall submit the necessary paperwork for the electronic payment to the appropriate federal agency authorities within thirty (30) days after the terms of this Agreement are adopted and entered as an order of the Court or Plaintiffs provide the information required to facilitate the payment, whichever is later.

      d.      Plaintiffs agree to accept Federal Defendants' payment of $120,00 in full satisfaction of any and all claims for attorneys' fees and costs of litigation incurred in this matter. Plaintiffs agree that receipt of this payment from Federal Defendants shall operate as a waiver and release of any claims for attorneys' fees and costs in this matter.

      e.      Except with respect to the obligations specifically required under this Agreement, Plaintiffs and Plaintiffs' counsel agree to hold harmless Federal Defendants in any litigation, further suit, or claim arising from the payment of the agreed-upon settlement amount, including any claims that may arise as to any apportionment of the payment amount to Plaintiffs and Plaintiffs' counsel.

      f.      Plaintiffs acknowledge that under 31 U.S.C. §§ 3711, 3716, 26 U.S.C.§ 6402(d), 31 C.F.R. §§ 285.5, 901.3, and other authorities, the United States may offset

the settlement payment amount to account for any delinquent debts to the United States owed by Plaintiffs. *See Astrue v. Ratliff*, 560 U.S. 586 (2010).

      g.      Nothing in this Agreement shall be interpreted as, or shall constitute, a commitment or requirement that Federal Defendants are obligated to pay any funds exceeding those available or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other appropriations law.

6.      <u>General Terms of the Parties' Agreement</u>.

      a.      By this Agreement, Federal Defendants do not waive any right to contest First Amendment allegations or fees or costs claimed by Plaintiffs or Plaintiffs' counsel, in any future litigation, or continuation of the present action.

      b.      The Parties hereby stipulate and respectfully request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement. *See Kokkonen v. Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

      c.      This Agreement is the result of compromise and settlement, and it is based on and limited solely to the facts involved in this case. This Agreement does not represent an admission by Plaintiffs or Federal Defendants to any fact, claim, or defense concerning any issue in this lawsuit. This Agreement has no precedential value and shall not be used as evidence of such in any other matter.

      d.      This Agreement shall be binding on the Parties and their successors, agency, designees, employees, and all those acting by and through their authority. The Parties agree that this Agreement was negotiated in good faith and that this Agreement constitutes a resolution of claims that were denied and disputed by the Parties.

e.  The undersigned representatives of the Parties certify that they are fully authorized by the Parties they represent to agree to the terms and conditions of this Agreement and legally bind the Parties to it, and do hereby agree to the terms herein.

f.  This document sets forth the entire Agreement of the Parties. All previous understandings, agreements, and communications prior to the date hereof, whether express or implied, oral or written, relating to the subject matter of this Agreement, are fully and completely extinguished and superseded by this Agreement. No modification of this Agreement shall be valid unless expressly consented to in writing by the Parties.

g.  This Agreement shall be governed by and construed under federal law.

h.  The terms of this Agreement shall become effective upon approval from this Court. Plaintiffs and Federal Defendants agree that electronic signatures are sufficient to bind the Parties.

WHEREFORE, the Parties respectfully request that the Court sign the attached proposed order adopting and approving this Agreement.

Dated: June 20, 2025                                    Respectfully Submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

 /s/ Michelle M. Spatz
MICHELLE M. SPATZ, Trial Attorney
Wildlife and Marine Resources Section
michelle.spatz@usdoj.gov
(202) 598-9741

*Attorneys for Federal Defendants*

/s/ Jessica L. Blome
Jessica L. Blome
(Cal. Bar No. 314898, admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on June 20, 2025, I filed the foregoing Joint Motion for Entry of Stipulated Settlement Agreement on Plaintiffs' Sixth Cause of Action and Claim for Attorneys' Fees and Costs electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

                                              /s/ *Michelle M. Spatz*
                                              Michelle M. Spatz
                                              U.S. Department of Justice